979 P.2d 864 (1999)
HONESTY IN ENVIRONMENTAL ANALYSIS AND LEGISLATION (HEAL); Jack Temple and Bess Temple, husband and wife; Betty Lock; Irene Kochendorfer; Sam Brace; Wayne Kemp; and A. Duane Munro, Respondents,
v.
CENTRAL PUGET SOUND GROWTH MANAGEMENT HEARINGS BOARD, Defendant,
City of Seattle, Appellant.
No. 40939-5-I.
Court of Appeals of Washington, Division 1.
June 21, 1999.
As Amended on Reconsideration in Part August 25, 1999.
*866 Lawrence Watters, Columbia River Gorge Commission, White Salmon, for Amicus Curiae.
*867 Judith Barbour & Eleanore Baxendale, Seattle, for Appellant.
John M. Groen, Bellevue, Brent Boger, Vancouver, for Respondents.
*865 APPELWICK, J.
In developing critical areas policies and regulations, a city or county must include in the record the best available science, as a factor to be considered along with all other factors mandated to be considered by the Growth Management Act, 36.70A RCW. Growth management hearings boards have jurisdiction to review a city or county's critical areas policies, but only for the limited purpose of reviewing whether the policies are in compliance with the requirement to include the best available science in the process of developing the policy.

FACTS
In 1995 the City of Seattle (City) adopted Ordinance 117945, amending the City's critical areas regulations, and Resolution 29253, clarifying and amending the policies upon which the critical areas regulations are based. Honesty in Environmental Analysis and Legislation (HEAL) and seven individual landowners challenged the City's adoption of these policies and regulations, filing a petition for review with the Central Puget Sound Growth Management Hearings Board (Board). The Board determined that it had jurisdiction to review the regulations but not the policies. The Board also determined that RCW 36.70A.172(1) required the City to include the best available science in the record for consideration during the process of developing critical areas regulations, and that the City had complied with the statute in adopting Ordinance 117945. HEAL appealed the Board's decision to the superior court. The trial court reversed the Board, holding that the Board had jurisdiction to review the policies and that RCW 36.70A.172(1) requires that the best available science be included in a substantive way in adoption of critical areas policies and regulations. The trial court remanded to the Board for review of the Resolution and Ordinance based on the court's ruling. The City appealed the trial court's ruling. At superior court, HEAL requested attorney fees as a prevailing party against the Board, pursuant to RCW 4.84.050. The trial court denied the motion. HEAL cross-appeals the trial court's denial of their motion for attorney fees.

ANALYSIS
Standard of Review
In reviewing a superior court's final order on review of a Board decision, an appellate court applies the standards of the Administrative Procedures Act directly to the record before the agency, sitting in the same position as the superior court. City of Redmond v. Central Puget Sound Growth Management Hearings Board, 136 Wash.2d 38, 959 P.2d 1091 (1998), citing Tapper v. Employment Sec. Dep't, 122 Wash.2d 397, 402, 858 P.2d 494 (1993). The question of whether an agency has erroneously interpreted or applied the law[1] is reviewed de novo. "We accord deference to an agency interpretation of the law where the agency has specialized expertise in dealing with such issues, but we are not bound by an agency's interpretation of a statute." City of Redmond, 136 Wash.2d at 46, 959 P.2d 1091. We must determine whether an agency decision is supported by evidence that is substantial when viewed in light of the whole record before the court.[2] Substantial evidence is "a sufficient quantity of evidence to persuade a fair-minded person of the truth or correctness of the order." City of Redmond, 136 Wash.2d at 46, 959 P.2d 1091, quoting Callecod v. Washington State Patrol, 84 Wash. App. 663, 673, 929 P.2d 510, review denied, 132 Wash.2d 1004, 939 P.2d 215 (1997).
Board Jurisdiction Over Policies and Regulations
Growth management hearings boards are granted specific jurisdiction to hear and determine only those petitions alleging that a governmental agency is not in compliance with the requirements of the Growth Management *868 Act (GMA) and certain other statutes.[3] In addition, RCW 36.70A.300(1) provides that a Board's final order must be based exclusively on whether or not a city or county is in compliance with "the requirements of this chapter...." (Emphasis added). The question, according to the City, is whether a city's critical areas policies are a requirement of the GMA.
In its decision, the Board determined that because cities are required to adopt development regulations to protect critical areas, such regulations are subject to Board review. The Board further determined, however, that the GMA does not require cities to adopt policies to protect critical areas. The Board therefore determined that it had no authority to review a resolution clarifying such policies.
HEAL argues that the Board has jurisdiction to review whether the City's steep slope policies comply with the GMA, contending that although the GMA does not require that cities adopt critical areas policies, the statute requires that if a city chooses to develop such policies, the city must include the best available science. HEAL cites RCW 36.70A.172(1):
In designating and protecting critical areas under this chapter, counties and cities shall include the best available science in developing policies and development regulations to protect the functions and values of critical areas. (Emphasis added).
Use of best available science in developing critical areas policies, argues HEAL, is therefore a requirement of the GMA, bringing the adoption of those policies within the Board's jurisdiction. We agree.
While the Board is correct that the GMA does not require local governments to adopt critical areas policies, the Board's decision that it, therefore, has no jurisdiction to review critical areas policies is not correct. Such a holding would render a portion of RCW 36.70A.172(1) a nullity. Courts must read legislation to give effect to every provision and avoid rendering certain passages superfluous or absurd. In re Personal Restraint of Robles, 63 Wash.App. 208, 216, 817 P.2d 419 (1991). RCW 36.70A.172(1) provides that counties and cities "shall include" best available science in developing both policies and regulations regarding critical areas. Inclusion of best available science in the development of critical areas policies and regulations is therefore a mandate of the GMA. We hold, therefore, that if a city or county chooses to adopt critical areas policies, the Board has jurisdiction pursuant to RCW 36.70A.280 to review such policies only for the purpose of determining whether the city or county has complied with the requirements of RCW 36.70A.171-172(1). On this issue the trial court is affirmed.
Applying the "Best Available Science" Requirement
The next question before this court is what meaning to ascribe to the best available science requirement found in RCW 36.70A.172(1):
[C]ounties and cities shall include the best available science in developing policies and development regulations to protect the function and values of critical areas.
To answer this question we look at the Board's interpretation, the court's interpretation, the changing positions of the parties, and the use of the phrase in the federal endangered species act:
1) The Board took the view that the Legislature did not mandate any substantive outcome. Rather, inclusion of science in the process of developing policies and regulations was done so science could be considered before the City made a decision.
The key portion of the section in dispute in this issue is "in developing." By using this language the Legislature clearly has not mandated any substantive outcome, or *869 product, when counties and cities take actions that are subject to the provisions of this section. Rather, the Legislature has required counties and cities to make the best available science a part of their process of "developing policies and development regulations to protect the functions and values of critical areas."
Based upon this analysis, the Board interprets the Legislature's intent to be that counties and cities include the best available science in their process of developing critical areas regulations, so that this information can be considered before any legislative action is taken.[4]
2) The trial court interlineated a finding in its order that: "(2) The interpretation of RCW 36.70A.172 requires inclusion of best available science in a substantive way and utilized to guide decision-making." Emphasis added. The trial court then reversed the Board's construction of the statute. The trial court's oral ruling sheds light on its written order. The court noted a recent court case which cited the Board's decision in this case for the proposition that science must be included in the process of developing regulations. HEAL was urging the trial court that the "to include" language of RCW 36.70A.172(1) was more specific and more substantive than the "to consider" language of RCW 36.70A.170[5], which was adopted five years earlier. The trial court adopted HEAL's legal reasoning, stating that it assured that citizens will get substantive review of the science.
3) The City's position before the Board, as described in the Board's order, was defending that best available science evidence was included in the record, relied upon in the process and that it resulted in regulations supported by that evidence. On appeal the City argues, "This statute creates a procedural requirement  and only a procedural requirement." It also argues, "... it is clear the Legislature did not intend to require science to be the pre-eminent standard for evaluating the result."
4) HEAL's position was described in the Board's order as arguing the City's regulations are not supported by the best available science. They appeared to challenge whose science is "best" and whether the regulations were supported by the proper "best" science. On appeal, HEAL argues the Legislature intended the statute to be both procedural and substantive, not mandating or dictating what the ultimate policy decision will be. HEAL adopts the trial court's formulation of "included in a substantive way and utilized to guide decision-making."
Interestingly, the position on this statute attributed to the City before the Board and the position on this statute taken by HEAL on appeal, appear to this court to be the same. HEAL's position on appeal is to adopt the trial court's formulation. The trial court reversed the Board, apparently believing that the Board's emphasis on process not product and their position that evidence "be considered before any legislative action is taken" was not the same as the trial court's formulation of "utilized to guide decision-making."
Despite the nuance of the parties' changing assertions, everyone agrees the best available science must be included in the process. The disagreement is in how much best available science controls the substantive outcome of the policy making process, under this statute.
A comparison with federal authority interpreting a similar "best available science" requirement in the Endangered Species Act (ESA) is instructive. "[W]here ... the agency presents scientifically respectable conclusions which appellants are able to dispute with rival evidence of presumably equal dignity, we will not displace the administrative choice. Nor will we remand the matter to the agency in order that the discrepant conclusions be reconciled." State of Louisiana v. Verity, 853 F.2d 322, 329 (5th Cir.1988). The purpose of the ESA's best available science requirement is to ensure that regulations not be based on speculation and surmise. Bennett v. Spear, 520 U.S. 154, 117 *870 S.Ct. 1154, 1168, 137 L.Ed.2d 281 (1997). We apply this view to RCW 36.70A.172(1).
The Board properly applied State of Louisiana v. Verity to the record before it in this case. The Board found the City took scientific evidence and included it in the record. HEAL presented evidence contrary to the evidence relied upon by the City. The Board properly concluded it could not displace the City's judgment about which science the City would rely upon as the best available science.
The Board keyed on the statutory phrase "in developing." The Board correctly concluded the best available science was to be part of the process of developing critical areas regulations. The science was included "so this information can be considered before any legislative action is taken." The Board rejected the idea that the statute required any particular substantive outcome or product. The Board is correct.
Best available science must be "included" in the record, but contrary to the City's position on appeal, as stated at the top of page 11 of the City's brief, that [t]his statute unambiguously creates a procedural requirement and only a procedural requirement, mere inclusion is not all that is required. The GMA requires balancing of more than a dozen goals and several specific directives in implementing those goals.[6] The Legislature passed RCW 36.70A.172(1) five years after the GMA was adopted. It knew of the other factors, but neither made best available science the sole factor, the factor above all other factors nor made it purely procedural. Instead, the Legislature left the cities and counties with the authority and obligation to take scientific evidence and to balance that evidence among the many goals and factors to fashion locally appropriate regulations based on the evidence not on speculation and surmise.
The trial court's formulation that best available science be included in a substantive way is not inconsistent with this court's reading of the Board's interpretation of the statute. The trial court also said the evidence would "guide" decision-making. If by this the trial court meant the science must be considered and balanced, then the trial court and the Board are in agreement. If "guide," means the proposed regulations or policies of the City must result in a particular outcome based on that evidence standing alone, the court went too far. The trial court, by reversing the Board, believed the Board had not applied the scientific evidence in a substantive way. We cannot agree with the trial court's reversal of the result.[7]
Whether scientific evidence is respectable and authoritative, challenged or unchallenged, controlling or of no consequence when balanced against other factors, goals and evidence to be considered, is first in the province of the city or county to decide. Then, if challenged, it is for the Growth Management Hearings Board to review. The Legislature has given great deference to the substantive outcome of that balancing process.[8] We hold that evidence of the best available science must be included in the record and must be considered substantively in the development of critical areas policies and regulations.
While the balancing of the many factors and goals could mean the scientific evidence does not play a major role in the final policy in some GMA contexts, it is hard to imagine in the context of critical areas. The policies at issue here deal with critical areas, which are deemed "critical" because they may be more susceptible to damage from development. The nature and extent of this susceptibility is a uniquely scientific inquiry. It is one in which the best available science is essential to an accurate decision about what *871 policies and regulations are necessary to mitigate and will in fact mitigate the environmental effects of new development.
The briefs of the parties omit any discussion of an important constitutional limitation on local government's discretion in adopting policies and regulations under GMA. Those policies and regulations are implemented only when they are applied to applications for permits. And under the State Environmental Policy Act, RCW 43.21C, a local government may impose development conditions and deny applications only if it first adopts policies and implementing regulations like those at issue here, as a basis for exercising that authority. RCW 43.21C.060. Therefore, the policies and regulations adopted under GMA must comply with the nexus[9] and rough[10] proportionality limits the United States Supreme Court has placed on governmental authority to impose conditions on development applications. If a local government fails to incorporate, or otherwise ignores the best available science, its policies and regulations may well serve as the basis for conditions and denials that are constitutionally prohibited.
Simply put, the nexus rule permits only those conditions necessary to mitigate a specific adverse impact of a proposal.[11] The rough proportionality requirement limits the extent of the mitigation measures, including denial, to those which are roughly proportional to the impact they are designed to mitigate.[12] Both requirements have also been incorporated into the GMA amendments to RCW 82.02 authorizing development conditions.[13]
For example, if the City proposed a policy prohibiting development on slopes steeper than a 40 percent grade or requiring expensive engineering conditions for any permitted project, only the best available science could provide its policy-makers with facts supporting those policies and regulations which, when applied to an application, will assure that the nexus and rough proportionality tests are met. If the City failed to use the best available science here in making its policy decision and adopting regulations, the permit decisions it bases on those regulations may not pass constitutional muster under Nollan and Dolan. The science the legislative body relies on must in fact be the best available to support its policy decisions. Under the cases and statutes cited above, it cannot ignore the best available science in favor of the science it prefers simply because the latter supports the decision it wants to make. If it does so, that decision will violate either the nexus or rough proportionality rules or both.
While the United States Supreme Court has said that the nexus and rough proportionality rules do not apply to outright denial of a project, we decline to adopt the dicta that Nollan and Dolan may be applied only to dedications of land required to allow a development to proceed. City of Monterey v. Del Monte Dunes, ___ U.S. ___, 119 S.Ct. 1624 (1999). Other conditions exacted to obtain development permits may differ in degree of burden short of a taking, but do not differ in kind. Nexus and rough proportionality have continued viability when evaluating them. We reverse the trial court and reinstate the Board's order with respect to Legal Issue No. 5, application of RCW 36.70A.172(1).
The Board's Liability for Attorney Fees
HEAL seeks reversal of the trial court order denying fees and seeks fees on appeal. The fees are sought pursuant to RCW 4.84.350 and RAP 18.1.
For purposes of RCW 4.84.350, HEAL is a qualified party, the Board is an agency, the Board has taken agency action and HEAL has claimed fees and expenses as outlined within the statute. When the requisites of that section are met, RCW 4.84.350 mandates award of fees and expenses if the *872 qualified party prevails, unless one of the two findings are made. Fees are not awarded if the court finds the agency action was substantially justified or if circumstances make the award unjust. HEAL has prevailed on the issue of the Board's jurisdiction to review the City's critical areas policies. That alone is enough to satisfy the prevailing party provision of this statute. We decline, however, to award HEAL's attorney fees and costs pursuant to RCW 4.84.350, because the Board was substantially justified in its decisions.[14] We look only at the jurisdictional issue on which HEAL prevails.
The express jurisdiction of the Board is contained in RCW 36.70.250, relating to geography and RCW 36.70A.280, relating to subject matter. The latter section is at issue here. In pertinent part it provides:
A growth management hearings board shall hear and determine only those petitions alleging either: (a) That a state agency, county, or city planning under this chapter is not in compliance with the requirements of this chapter, ...." (Emphasis added).
The heart of the issue is whether the City was required to adopt policies regarding critical areas, and if so, whether the adoption was in compliance with Chapter 36.70A RCW. The Board concluded the Chapter contained no express requirement that the City adopt such policies, therefore, it lacked jurisdiction to reach compliance issues.
The Board is correct that the City was not expressly required to adopt such policies. This court concluded that if the City does adopt such policies, the City must comply with Chapter 36.70A RCW and RCW 36.70A.172. The Legislature must have intended an enforcement mechanism for RCW 36.70.172. Since the Board's review is that mechanism, implicitly the Legislature must have intended the Board have jurisdiction.
We note the Legislature grants agencies authority, and takes a dim view of agencies granting themselves additional authority. This was a recurring theme in recent regulatory reform efforts in the Legislature. In this context, the Board's reluctance to assert jurisdiction beyond that expressly granted, is substantially justified for purposes of declining to award fees pursuant to RCW 4.84.350.
The request for fees and costs is denied. The case is remanded to the Board for determination of whether the critical areas policies adopted by Seattle comply with RCW 36.70A.172, consistent with this opinion.
AGID, A.C.J., and WEBSTER, J., concur.
NOTES
[1] RCW 34.05.570(3)(d).
[2] RCW 34.05.570(3)(e).
[3] In pertinent part, RCW 36.70A.280(1)(a) provides:

Matters subject to board review. (1) A growth management hearings board shall hear and determine only those petitions alleging either:
That a state agency, county, or city planning under this chapter is not in compliance with the requirements of this chapter, chapter 90.58 RCW as it relates to the adoption of shoreline master programs or amendments thereto, or chapter 43.21C RCW as it relates to plans, development regulations, or amendments, adopted under RCW 36.70A.040 or chapter 90.58 RCW; or....
[4] Final Decision and Order, XX-X-XXXX at 19-20.
[5] RCW 36.70A.170 directs that cities and counties making designations of critical areas consider guidelines adopted pursuant to RCW 36.70A.050. The latter section designates who shall be consulted, but not what the substantive content of their testimony must address or include.
[6] For example, RCW 36.70A.020; RCW 36.70A.060(2); RCW 36.70A.060(1),(2); RCW 36.70A.210(1).
[7] We understand the trial court's position and concern when reading footnote 12 of the Final Decision and Order, XX-X-XXXX at 21. The Board was wrong when it asserted the City was not required to base the ordinance either on externally supplied science or on City supplied science. Nonetheless, the Board's decision was correct.
[8] We note that the Legislature has adopted amendments to RCW 36.70A.320, which leave the burden on the plaintiff to prove a city or county acted arbitrarily or capriciously in view of the entire record and the goals and requirements of the Growth Management Act.
[9] Nollan v. California Coastal Comm'n, 483 U.S. 825, 107 S.Ct. 3141, 97 L.Ed.2d 677 (1987); Unlimited v. Kitsap County, 50 Wash.App. 723, 750 P.2d 651, review denied, 111 Wash.2d 1008 (1988); Burton v. Clark County, 91 Wash.App. 505, 958 P.2d 343 (1998).
[10] Dolan v. City of Tigard, 512 U.S. 374, 114 S.Ct. 2309, 129 L.Ed.2d 304 (1994); Sparks v. Douglas County, 127 Wash.2d 901, 904 P.2d 738 (1995); Burton, 91 Wash.App. at 523, 958 P.2d 343.
[11] Nollan, 483 U.S. at 825, 107 S.Ct. 3141.
[12] Dolan, 512 U.S. at 374, 114 S.Ct. 2309.
[13] See RCW 82.02.-050(3)(a) and (b).
[14] Because we decide the Board was substantially justified in its actions, we do not address the issue raised by the attorney general whether an award of fees against the agency sitting in a judicial capacity and not a party to the administrative action would be unjust.