[No. 29351-0-II. Division Two. April 13, 2004.]

FERRY COUNTY, *Appellant*, v. CONCERNED FRIENDS OF FERRY
COUNTY, ET AL., *Respondents*.

*James A. Van Sauer, Prosecuting Attorney*, and *Stephen T. Graham, Deputy*, for appellant.

*Megan E. McCloskey* and *Michael D. Pierson* (of *Riddell Williams, P.S.*), for respondents.

HOUGHTON, J. — Ferry County (County) appeals from a superior court decision affirming an Eastern Washington Growth Management Hearings Board (Board) decision finding the County in noncompliance with the Growth Management Act (GMA), chapter 36.70A RCW. We affirm.

## FACTS

On July 31, 1998, the Board entered an order finding that the County was not in compliance with the GMA. The Board directed the County to amend its GMA required comprehensive plan to "provide a foundation for protection which shall include the best available science in developing policies and development regulations to protect the functions and values of critical areas."[1] *Concerned Friends of Ferry County v. Ferry County*, No. 97-1-0018, 1998 WL 498783 at *2-3 (E. Wash. Growth Mgmt. Hr'gs Bd. July 31, 1998). In response, the County adopted an amendment to its comprehensive plan.

At a follow-up compliance hearing, the Board determined that the County continued to fail to comply with the GMA. Primarily, the Board found that the "record provides no evidence that Ferry County considered 'best available science' " in designating fish and wildlife priority species and habitat conservation areas.[2] Admin. Bd. R. (BR) at 2. In its order on compliance, the Board noted that the County rejected the Department of Fish and Wildlife (DFW) priority species recommendation[3] and that the County could compile its own list but only if it used best available science.

---

[1] The GMA requires that each county adopt development regulations identifying and protecting critical areas such as fish and wildlife habitat conservation areas. RCW 36.70A.030(5)(c), .050.

[2] The Board likewise faulted the County with regard to its designation of frequently flooded and aquifer recharge areas. But that designation is not before us on appeal.

[3] DFW lists the following as endangered, threatened, or sensitive species in the County:

| Birds | Bald Eagle | Threatened |
| | Ferruginous Hawk | Threatened |
| | Peregrine Falcon | Endangered |

After the Board found against the County and denied reconsideration of its decision, the County requested a second compliance hearing. The County also amended its critical areas section with the help of the County's expert, Dr. Donald McKnight, a retired Alaska Department of Fish and Game Wildlife Planner, who found only two priority species within the County's boundaries.[4]

In its second order on compliance, the Board again recognized the County's prerogative not to adopt a DFW recommendation. But it also noted that the County must set forth a sound reasoning process based on best available science and that it failed to do so. The Board recited that:

> The County has consulted with a credentialed biologist, but the process he undertook to develop his recommendations is inadequate. There is no evidence in the record that the consultant coordinated his recommendation with any other scientists with expertise in Ferry County, such as the Colville tribe, U.S. Forest Service, or the DFW. There is no evidence that any on-site field observations were conducted. With specific reference to the Peregrine Falcon, his recommendation seems to conflict with activities of the Colville Tribe. Regarding Bull Trout, a sensitive species documented to exist in Ferry County, he makes no mention at all.
>
> Having said that, the Board finds no requirement for Ferry County to address species other than endangered, threatened, or sensitive in their Comprehensive Plan. While inclusion of other listed priority species may be desirable, not including

| | Sandhill Crane | Endangered |
|---------|------------------------|------------|
| | Upland Sandpiper | Endangered |
| | American White Pelican | Endangered |
| Mammals | Lynx | Threatened |
| | Pygmy Rabbit | Endangered |
| | Gray Wolf | Endangered |
| | Grizzly Bear | Endangered |
| | Woodland Caribou | Endangered |
| Fish | Bull Trout | Sensitive |

BR at 246.

[4] The County's comprehensive plan, amended on February 28, 2000, listed only the bald eagle and lynx as specially protected species.

them is within legislative authority of Ferry County. However, Ferry County has provided insufficient evidence that its limited listing of species that are endangered, threatened, or sensitive is based on best available science as required by RCW 36.70A.172.

The Board determines the County has not provided a scientific foundation, evidence of analysis, or a reasoned process to justify their listing, while rejecting the recommendations of endangered, threatened and sensitive species and wildlife habitat conservation areas provided by DFW. Such action was a mistake and is clearly erroneous.

BR at 254-55.

The Board again ordered the County to "[c]onsider and include best available science in the designation of priority species and habitat areas." BR at 245. It directed the County to "designate fish and wildlife habitat and species utilizing best available science within 120 days." BR at 257.

On June 10, 2002, the County sought judicial review under the Administrative Procedure Act (APA), RCW 34.05.570. The County argued that insufficient evidence supported the Board's decision. It also argued that the Board improperly allowed state employee ex parte contacts with its members. In declining to overturn the Board decision on this second ground, the superior court found that the County demonstrated no prejudice and that it could have averted any potential problems through earlier Board action:

State officials should be more sensitive to the role of the Growth Management Hearings Board as an arbiter, as a quasi-judicial court, not a legislative body such as the Ferry County Commissioners. It is perfectly appropriate for a State employee or official . . . to write the Ferry County Board of Commissioners explaining his views. It is inappropriate for him to write the quasi-judicial Growth Management Hearings Board with his views except in the context of submitting evidence to that Board for its consideration along with all other evidence.

But the fact that this occurred is not grounds for overturning the Board's decision here. There's been no showing that preju-

dice occurred. The cure for that type of improper activity was—should have been—evident and was certainly available to Ferry County long before we get to the appeal of the final decision of the Growth Management Hearings Board.

Report of Proceedings at 5-6.

The superior court affirmed the Board's second order on compliance. The County appeals.

ANALYSIS

Growth Management Act

In 1990, the legislature enacted the GMA to coordinate and plan growth. RCW 36.70A.010. As part of this planned growth, the GMA requires each county to adopt development regulations identifying and protecting critical areas. RCW 36.70A.050, .060. The critical area at issue here comprises fish and wildlife conservation habitat. RCW 36.70A.030(5)(c).

■ The GMA requires that the Board adjudicate compliance, including invalidating noncompliant comprehensive plans. RCW 36.70A.280, .302. The GMA further requires that the Board find compliance unless it determines that a county's action is clearly erroneous. RCW 36.70A.320(3). In order to find noncompliance, the Board must review the entire record, considering GMA goals, and be left with the firm conviction that a county made a mistake. *Whidbey Envtl. Action Network v. Island County*, 118 Wn. App. 567, 575, 76 P.3d 1215 (2003).

■■ We base our review of a Board decision on the record before the Board. *Thurston County v. Cooper Point Ass'n*, 148 Wn.2d 1, 7, 57 P.3d 1156 (2002). On appeal, we determine whether substantial evidence supports the Board's findings of fact. *Honesty in Envtl. Analysis & Legislation (HEAL) v. Cent. Puget Sound Growth Mgmt. Hearings Bd.*, 96 Wn. App. 522, 526, 979 P.2d 864 (1999). Substantial evidence is that sufficient to persuade a fair-

minded, rational person of the truth of the matter. *HEAL*, 96 Wn. App. at 526.

■■ We review conclusions of law de novo, giving great, but not binding, weight to the Board's interpretation within its subject matter expertise. *HEAL*, 96 Wn. App. at 526. And we do not overturn an agency decision even where the opposing party reasonably disputes the evidence with evidence of "equal dignity." *HEAL*, 96 Wn. App. at 530-31 (citing *Louisiana ex rel. Guste v. Verity*, 853 F.2d 322, 329 (5th Cir. 1988)).

Under the APA, we may provide relief from an agency decision in nine specific instances. RCW 34.05.570(3). The County argues that four grounds for relief are at issue here.[5]

### The Board's Order

The County contends that insufficient evidence supports the Board's reliance on DFW's priority species list.[6] It asserts that DFW lists species found in a geographical region larger than the County's boundaries. Therefore, it argues that insufficient evidence supports a finding that DFW's 12 listed species actually exist in the County.

The DFW Priority Habitats and Species Program provides comprehensive information about wildlife and fisheries predominately for land use planning purposes. In 1998,

---

[5] The County raises arguments under RCW 34.05.570(3)(c), (d), (e), and (h)(i), which provide for relief when: (c) the Board engages in an unlawful procedure or decision-making process; (d) the Board erroneously interprets or applies the law; (e) substantial evidence does not support the Board's order; (h)(i) the Board's order is arbitrary or capricious. Appellant's Br. at 11. But the County's brief analyzes only two assignments of error. First, that the Board decision results from unlawful procedure. And secondly, that substantial evidence does not support the Board's decision. Therefore, we assume that because the County argues substantial evidence does not support its decision, the Board impliedly misinterpreted or misapplied the law resulting in an arbitrary or capricious decision. Thus, we address only (c) and (e).

[6] The County broadly assigns error to the Board's failure to provide sufficient findings of fact for review, but it fails to fully analyze this issue and we need not address it. RAP 10.3(a)(3), (5). Nevertheless, we disagree that the Board's detailed decision does not sufficiently apprise us of the issues on review.

and again in 2000, DFW listed 12 threatened or sensitive species that it recommended for County protection.

 In its earlier order, the Board noted that the County may decline to follow a DFW recommendation, but only if the County based its decision on a sound, reasoned process known as the "best available science."[7] RCW 36.70A.172; *HEAL*, 96 Wn. App. at 525; BR at 254. The County chose not to follow DFW's recommendation that it protect all 12 species. In its amended February 28, 2000 comprehensive plan, the County listed only the bald eagle and lynx in an effort to comply with the Board's earlier order on compliance.

In opposing protection implementation based on DFW's list, the County called only one expert, Dr. McKnight. Dr. McKnight's four-page report cites two sources: a 1997 book based on breeding birds in Washington and conversations with a Washington State Game Department biologist. The Board found that Dr. McKnight's analysis and recommendations were inadequate.

Here, substantial evidence supports the Board's finding and conclusion that the County did not base its species listing on a reasoned process and that it erred in failing to do so. It provided only Dr. McKnight's limited report. And that report did not include field observations, consultation with other interested experts such as the Forest Service or the Colville Federated Tribes, or engage in other reasoned analysis. The County's argument fails.

### Ex Parte Contacts

The County also contends that the Board engaged in unlawful procedure. It asserts that the Board had inappropriate ex parte contacts that resulted in an improper process. The County cites four letters it describes as ex parte contacts: (1) a July 16, 1997 letter from DFW biolo-

---

[7] Under RCW 36.70A.172(1), using best available science ensures that regulatory decisions are not "based on . . . speculation and surmise." *HEAL*, 96 Wn. App. at 532.

gist, Kevin Robinette, to the Board members and copied to the County;[8] (2) an August 31, 1997 letter from a Growth Management Coordinator to the County and copied to the Board;[9] (3) a September 25, 1998 letter from Robinette to the County and copied to the Board;[10] and (4) a December 16, 1998 letter from Robinette to the Community Trade and Economic Development Department and copied to the County and the Board.[11]

■ Statutes and regulations seek to discourage ex parte contacts with a state board. See RCW 34.05.455; RCW 36.70A.270(7); WAC 242-02-120, -130. When a party fails to comply with these rules, the matter may be brought to the Board's attention and the Board may dismiss the action. WAC 242-02-720.

We agree with the superior court that scrupulous attention must be paid to fairness and the appearance of fairness protected by the ex parte contact rules. Nevertheless, even assuming that the letters, all of which were either directed or copied to the County, were ex parte contacts, we also agree with the superior court that the County fails to demonstrate prejudice. Moreover, if the County were concerned, it could have brought the matter before the Board and sought dismissal in late 1998 or early 1999, and not first on review before the superior court. The County's argument based on ex parte contact fails.

Affirmed.

QUINN-BRINTNALL, C.J., and ARMSTRONG, J., concur.

Review granted at 153 Wn.2d 1016 (2005).

---

[8] The letter commented on the County's comprehensive plan's critical areas section and suggested changes.

[9] The letter thanked the Board for allowing it to comment on the County's plan and noted that the plan still needed improvement.

[10] In the letter, DFW responded to the County's request that it review the County's Second Amended Comprehensive Plan. The letter also noted that DFW retained concerns about the County's plan.

[11] The letter thanked the County for its work but noted that the second amended plan remained weak.