197 P.3d 1228 (2008)
SPOKANE COUNTY, a political subdivision of the State of Washington, Appellant,
v.
CITY OF SPOKANE, a municipal corporation, Respondent.
No. 26988-4-III.
Court of Appeals of Washington, Division 3.
January 6, 2009.
*1229 David W. Hubert, Attorney at Law, Spokane, WA, for Appellant.
Michael Joseph Piccolo, Office of City Attorney, Spokane, WA, for Respondent.
SWEENEY, J.
¶ 1 The essential question here is whether the Growth Management Hearings Board had authority to require Spokane County to establish a "joint planning area" with the City of Spokane within an established urban growth area. We find no such authority in the Growth Management Act, chapter 36.70A RCW, and reverse the trial court's conclusion to the contrary.

FACTS
¶ 2 The City of Spokane (City) petitioned the Eastern Washington Growth Management Hearings Board (Hearings Board) to review Spokane County's (County) refusal to designate a portion of the North Metro urban growth area as a "joint planning area."
¶ 3 State Highway 2 divides the North Metro area. The County designated the area an urban growth area. It then redesignated a portion of that urban growth area as a "Spokane CountyCity of Spokane North Metro Urban Growth Area/Joint Planning Area." The County did not designate the remainder of the North Metro urban growth area as a joint planning area. And it is that decision that is at the heart of this dispute.
¶ 4 The City complained that the County's redesignation violated the Growth Management Act (GMA), the Hearings Board's July 3, 2002 final decision and order, and the County's own planning policies.
¶ 5 The Hearings Board agreed with the City and concluded that the County's actions violated the GMA and the Hearings Board's 2002 final decision because the County failed to (1) redesignate the entire North Metro area as a joint planning area; (2) explain in writing why it did not designate the entire North Metro area as a joint planning area; and (3) engage in joint planning with the City.
¶ 6 The Hearings Board ordered the County to designate the entire North Metro urban growth area as a joint planning area and to enter into interlocal agreements with the City.
¶ 7 The County appeals that order.

*1230 DISCUSSION

COLLATERAL ESTOPPEL
¶ 8 The City first argues that we should not entertain the County's appeal because similar issues were addressed in the Hearings Board's 2002 final decision and order, and the County did not appeal that decision.
¶ 9 Whether collateral estoppel bars relitigation here is a question of law and so we review de novo. Christensen v. Grant County Hosp. Dist. No. 1, 152 Wash.2d 299, 305, 96 P.3d 957 (2004).
¶ 10 A challenge based on collateral estoppel is not proper here because the City raises the challenge for the first time on appeal. Creech v. AGCO Corp., 133 Wash. App. 681, 687, 138 P.3d 623 (2006). We would conclude, nonetheless, that the County is not collaterally estopped from appealing the Hearings Board's final order for a number of reasons. First, the GMA provides that an aggrieved party may appeal a Hearings Board's final decision and order to superior court. See RCW 36.70A.300(5). The County was aggrieved by the Hearings Board's final decision and order dated November 27, 2006. The Hearings Board determined that the County was not in compliance with the GMA.
¶ 11 Second, collateral estoppel requires the City to show that "the issue decided in the earlier proceeding was identical to the issue presented in the later proceeding." Christensen, 152 Wash.2d at 307, 96 P.3d 957. The City has failed to satisfy this requirement. The issues here are not identical to those resolved in the parties' 2002 case. In 2002, the City argued that the County's original comprehensive plan did not comply with the GMA. Here, the City's objection is that the County's amendment to its comprehensive plan violates the GMA. The County, then, would not be collaterally estopped from appealing the Hearings Board's final decision and order dated November 27, 2006.

HEARINGS BOARD'S AUTHORITY
¶ 12 Whether an agency's order is outside its statutory authority is a question of law that we review de novo. City of Arlington v. Cent. Puget Sound Growth Mgmt. Hearings Bd., 164 Wash.2d 768, 193 P.3d 1077, 1082 (2008). "We apply the standards of the Washington Administrative Procedure Act, RCW 34.05, directly to the agency record in reviewing agency adjudicative proceedings." In re Disciplinary Proceeding Against Brown, 94 Wash.App. 7, 11, 972 P.2d 101 (1998). We may reverse an administrative order if it is outside the statutory authority of the Hearings Board. Id. at 11-12, 972 P.2d 101 (citing RCW 34.05.570(3)). And we strictly construe the GMA because it was controversial legislation. Thurston County v. W. Wash. Growth Mgmt. Hearings Bd., 164 Wash.2d 329, 342, 190 P.3d 38 (2008). It consequently includes some language that is deliberately vague. Id. It also includes some intentional omissions and inconsistencies. Id.

Authority to Revisit the Board's 2002 Decision
¶ 13 The County challenges the Hearings Board's orders 2, 3, and 4; all conclude that the County was out of compliance with the Board's 2002 order because the County did not treat the City like other cities when it failed to designate the entire North Metro area a joint planning area and when it failed to justify its decision in writing. The County argues that the Hearings Board already concluded in its final 2002 decision that the County was in compliance with the GMA and, therefore, cannot now revisit that decision.
¶ 14 The City responds that the Hearings Board has jurisdiction to review the County's compliance with the Hearings Board's 2002 order because the findings and conclusions from the earlier case are still valid and binding notwithstanding the determination of compliance in an agreed order of dismissal dated August 14, 2003.
¶ 15 First, a growth management hearings board can determine only whether comprehensive plans and development regulations (or amendments to either) comply with the GMA and certain other statutes. RCW 36.70A.280(1)(a); Honesty in Envtl. Analysis & Legislation (HEAL) v. Cent. Puget Sound Growth Mgmt. Hearings Bd., 96 Wash.App. 522, 527, 979 P.2d 864 (1999). *1231 Next, the Hearings Board, in the earlier 2002 appeal, already concluded that the County had complied with the GMA. It was then improper for the Board to revisit that order. Compare RCW 36.70A.300(3)(a) (no periodic reports requirement after compliance determination) with RCW 36.70A.300(3)(b) (giving hearings board authority to follow up after noncompliance determination).

Authority To Conclude that the County is not in Compliance with its Policies
¶ 16 The County also contends that the Hearings Board acted without jurisdiction when it interpreted and ordered compliance with the County's countywide planning policies. The County claims that the Hearings Board does not have authority to decide whether the County has violated its own planning policies.
¶ 17 But the challenged findings, conclusions, and orders do not show that the Hearings Board concluded that the County violated its planning policies. The Hearings Board determined that the County's resolution violated only GMA requirements and the Hearings Board's 2002 final decision and order. We need not, then, address whether the Hearings Board has jurisdiction over a county's compliance with its own planning policies.

JOINT PLANNING AREA
¶ 18 The County argues that the Hearings Board erroneously interpreted and applied the GMA by requiring that the County designate all of the North Metro urban growth area as a joint planning area. It maintains that the GMA, specifically RCW 36.70A.110(4), does not require such action and, absent a specific GMA requirement, the County had discretion to re-designate the North Metro urban growth area as it did.
¶ 19 The City responds that the Hearings Board had the power to invalidate noncomplying comprehensive plans and development regulations. RCW 36.70A.280, .302.
¶ 20 The three challenged conclusions are similar.
¶ 21 Conclusion of law 7 says in pertinent part:
RCW 36.70A.010 and 36.70A.110(4) require Spokane County to designate areas of the UGA [urban growth area] adjacent to the City of Spokane as joint planning areas for the City.
Administrative Record (AR) Doc. 25, at 27.
¶ 22 Conclusion of law 8 repeats conclusion of law 7:
RCW 36.70A.110(4) requires Spokane County to designate areas of the UGA adjacent to the City of Spokane as joint planning areas for the City.
Id.
¶ 23 And conclusion of law 9 provides in part:
RCW 36.70A.010, RCW 36.70A.020(11) and RCW 36.70A.210(3)(f) require Spokane County to designate areas of the UGA adjacent to the City of Spokane as joint planning areas for the City of Spokane.
Id.
¶ 24 The question is whether the Hearings Board properly interpreted the statutes that these conclusions are based onRCW 36.70A.010, .020(11), .110(4), and .210(3)(f). That is a question of law and so, again, our review is de novo. Tahoma Audubon Soc'y v. Park Junction Partners, 128 Wash.App. 671, 682, 116 P.3d 1046 (2005).
¶ 25 RCW 36.70A.110(4), recommends that cities provide urban governmental services, but it does not require counties to designate joint planning areas. RCW 36.70A.110(4), therefore, does not support conclusions of law 7 and 8.
¶ 26 RCW 36.70A.010 and .020(11) encourage cooperation and coordination between counties and cities. Certainly, they show that the legislature intended that counties and cities would work together to plan. But we see nothing in the language of these statutes that requires that this goal of cooperation and coordination be reached through designated joint planning areas.
¶ 27 RCW 36.70A.210(3)(f) states that countywide planning policies "shall at a minimum, address ... [p]olicies for joint county and city planning within urban growth areas." The language of this subsection neither addresses nor requires joint planning *1232 areas. It refers only to urban growth areas. And the subsection's main focus is on the development of countywide planning policies. RCW 36.70A.210(3)(f), then, does not require that the County designate those urban growth areas next to the City as joint planning areas.

JOINT PLANNING AGREEMENTS
¶ 28 The County next argues that the Hearings Board erroneously interpreted and applied the GMA by requiring that the County enter into written joint planning agreements with the City because the statutory scheme (specifically, RCW 36.70A.010 and.020(11)) does not require such agreements.
¶ 29 The City responds that the GMA requires multi-jurisdictional coordination and cooperation between cities and counties. RCW 36.70A.010, .020(11), and .210(3)(f). The City also claims that WAC 365-195-335 requires joint planning agreements. It contends that the Hearings Board, therefore, correctly concluded that the County must enter joint planning agreements with the City.
¶ 30 Conclusion of law 9 states in relevant part:
RCW 36.70A.010, RCW 36.70A.020(11) and RCW 36.70A.210(3)(f) require Spokane County ... to enter into joint planning agreements for the joint planning of areas designated as joint planning areas. AR Doc. 25, at 27.
¶ 31 Division Two of this court has concluded that the Central Puget Sound Growth Management Hearings Board did not have authority to require negotiation and execution of an interlocal agreement (also known as a joint planning agreement) because the agreement was not a GMA action. City of Burien v. Cent. Puget Sound Growth Mgmt. Hearings Bd., 113 Wash.App. 375, 388-89, 53 P.3d 1028 (2002).
¶ 32 In Burien, the relevant issue before the hearings board was whether the City of SeaTac violated the GMA by entering into an interlocal agreement during private, rather than public, negotiations. Id. at 377, 53 P.3d 1028. The hearings board refused to review the interlocal agreement for compliance with the GMA. Id. at 384, 53 P.3d 1028. The Court of Appeals agreed that the hearings board lacked jurisdiction to review the agreement and affirmed the hearings board's decision. Id. at 389, 53 P.3d 1028.
¶ 33 Here, the City essentially asked the Hearings Board to determine whether the lack of a joint planning agreement violates GMA requirements. But hearings boards cannot review interlocal agreements. Id. at 384, 53 P.3d 1028. It follows, then, that a hearings board also cannot review the lack of an interlocal agreement. Neither are GMA actions. See id. (negotiation and execution of joint planning agreement is a non-GMA action).
¶ 34 Moreover, the language of RCW 36.70A.010, .020(11), and .210(3)(f) does not support the Hearings Board's conclusion that the GMA requires the County to enter joint planning agreements with cities. Again, we strictly construe the GMA. Thurston County, 164 Wash.2d at 342, 190 P.3d 38.
¶ 35 RCW 36.70A.010 and .020(11) encourage cooperation and coordination between counties and cities. And RCW 36.70A.210(3)(f) guides the development of countywide planning policies. None of these sections, however, directly or indirectly address joint planning agreements. The GMA does not require counties and cities to enter into joint planning agreements.

TRANSFORMATION OF LOCAL GOVERNMENT
¶ 36 The County next argues that the Hearings Board's conclusion that the County must adopt strategies to transfer local government from the County to the City exceeds the Hearings Board's authority. The County argues that the interpretation is a Hearings Board-created requirement that, again, has no basis in the language of the GMA. It claims that the plain language of RCW 36.70A.110(4) does not require counties to adopt strategies to transfer local government in urban growth areas to cities.
¶ 37 The City responds that all three growth management hearings boards recognize that the GMA requires counties to adopt strategies to transfer local government to cities. The City argues that the County's *1233 policies also require that the County adopt such strategies.
¶ 38 Here, the Hearings Board concluded that RCW 36.70A.110(4) requires that the County adopt such strategies:
RCW 36.70A.110(4) requires comprehensive plans to establish and achieve a realistic strategy for the transformation of local government whereby cities are the units of local government providing urban governmental services.
AR Doc. 25, at 27 (conclusion of law 5). The County argues that RCW 36.70A.110(4) does not require it to do anything.
¶ 39 Statutory interpretation is a question of law that we review de novo. King County v. Cent. Puget Sound Growth Mgmt. Hearings Bd., 142 Wash.2d 543, 555, 14 P.3d 133 (2000). Our goal, when interpreting statutes, is to determine and implement the legislature's intent. Id. We first look at a statute's plain language. Id.
¶ 40 RCW 36.70A.110's plain language addresses requirements and recommendations for urban growth areas. It requires counties to designate urban growth areas in areas with densities sufficient to permit urban growth. RCW 36.70A.110(1),(2). The statute also requires counties to include those designations in its comprehensive plan. RCW 36.70A.110(6). Finally, it recommends where urban growth areas should be located and who should provide governmental services to those areas. RCW 36.70A.110(3),(4).
¶ 41 But the language of RCW 36.70A.110(4) does not require strategies for transferring government. It merely indicates that cities should provide governmental services to urban growth areas (as opposed to rural areas):
In general, cities are the units of local government most appropriate to provide urban government service. In general, it is not appropriate that urban governmental services be extended to or expanded in rural areas except in those limited circumstances shown to be necessary to protect basic public health and safety and the environment and when such services are financially supportable at rural densities and do not permit urban development.
RCW 36.70A.110(4). This subsection contains only recommendations, not requirements. In other words, the language suggests that the legislature intended a specific end-that cities provide urban governmental services and not rural governmental services. It does not imply that the legislature intended counties to adopt a preferred means to accomplish that end. RCW 36.70A.110(4) does not require that the County establish a strategy for the transformation of government.

CONCLUSION
¶ 42 The Hearings Board's final decision and order was outside its statutory authority. RCW 34.05.570(3)(b). We set aside the Hearings Board's final decision and order, and we reverse the superior court's order.
WE CONCUR: SCHULTHEIS, C.J., and KULIK, J.