COURT OF APPEALS DIV 1
2014 MAR -3 AM 9: 43


# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
## DIVISION ONE

| | | |
|---|---|---|
| MOHAMED ABDELKADIR, | ) | No. 69736-6-I |
| | ) | |
| Appellant, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| WASHINGTON STATE DEPARTMENT | ) | |
| OF EMPLOYMENT SECURITY, | ) | UNPUBLISHED OPINION |
| | ) | |
| Respondent. | ) | FILED: March 3, 2014 |
| | ) | |

VERELLEN, J. — Mohamed Abdelkadir appeals from a superior court order affirming a Washington Employment Security Department (Department) commissioner's decision denying his request for training benefits. The commissioner determined that Abdelkadir was ineligible to receive training benefits because he failed to file his application within the 60-day deadline and because he did not meet the statutory definition of a "dislocated worker." Because the commissioner's findings are supported by substantial evidence and the commissioner correctly applied the law, we affirm.

## FACTS

On February 19, 2009, Abdelkadir filed a claim with the Department for unemployment benefits. Although the commissioner initially denied Abdelkadir's

request, the Department later stipulated that he was eligible to receive unemployment benefits.[1]

On October 11, 2011, Abdelkadir submitted his application for training benefits to the Department. Abdelkadir planned to enroll in an automotive service training program that was scheduled to begin in January 2012. In the application, Abdelkadir identified the occupation of "driver" as his "main job."[2] His most recent work experience included approximately seven years as a driver for various employers.

The Department denied Abdelkadir's request for training benefits. It determined that he was ineligible because his primary occupation as a driver was considered "in demand," according to the Workforce Development Council.[3] The Department also determined that he was ineligible because he failed to submit his training application within the 60-day statutory period.

Abdelkadir appealed the Department's decision to the Office of Administrative Hearings. Following an administrative hearing, the administrative law judge (ALJ) affirmed the Department's decision.

Abdelkadir then petitioned the commissioner to review the ALJ's order. The commissioner adopted the ALJ's findings of facts and conclusions of law and affirmed the ALJ's order. Abdelkadir appealed to King County Superior Court, which affirmed the commissioner's decision.

---

[1] After the superior court affirmed the commissioner's decision denying Abdelkadir's request for unemployment benefits, Abdelkadir filed a notice of appeal with this court. Following settlement negotiations, the parties moved to withdraw the appeal pursuant to RAP 18.2 and stipulated to the reversal of the commissioner's decision.

[2] Certified Appeal Board Record (CABR) at 103, 105.

[3] CABR at 86.

No. 69736-6-I/3

Abdelkadir appeals.

## STANDARD OF REVIEW

The Washington Administrative Procedure Act (WAPA), chapter 34.05 RCW, governs judicial review of a final administrative decision of the commissioner of the Department.[4] In reviewing such a decision, we sit in the same position as the superior court and apply the standards of the WAPA directly to the administrative record that was before the agency.[5] Thus, we review the commissioner's decision, not the ALJ's decision or the superior court's ruling.[6]

A commissioner's decision is considered "prima facie correct."[7] The party asserting invalidity of an agency action—in this case, Abdelkadir— carries the burden of proving the invalidity.[8] Relief from an agency decision will be granted if the reviewing court determines that the commissioner has erroneously interpreted or applied the law, the order is not supported by substantial evidence, or the order is arbitrary or capricious.[9]

We review findings of fact for substantial evidence.[10] Substantial evidence is evidence that would persuade a fair-minded person of the truth or correctness of the

[4] Tapper v. Emp't Sec. Dep't, 122 Wn.2d 397, 402, 858 P.2d 494 (1993).

[5] Id.; Daniels v. Emp't Sec. Dep't, 168 Wn. App. 721, 727, 281 P.3d 310, review denied, 175 Wn.2d 1028 (2012).

[6] Verizon Nw., Inc. v. Wash. Emp't Sec. Dep't, 164 Wn.2d 909, 915, 194 P.3d 255 (2008).

[7] Anderson v. Emp't Sec. Dep't, 135 Wn. App. 887, 893, 146 P.3d 475 (2006).

[8] RCW 34.05.570(1)(a); RCW 50.32.150.

[9] RCW 34.05.570(3)(d),(e),(i); Tapper, 122 Wn.2d at 402.

[10] Smith v. Emp't Sec. Dep't, 155 Wn. App. 24, 32, 226 P.3d 263 (2010).

matter.[11] We review an agency's interpretation or application of the law de novo, giving substantial weight to the agency's interpretation of the statutes it administers.[12]

## DISCUSSION

As an initial matter, we note that Abdelkadir, representing himself, fails to comply with our rules on appeal. His brief does not contain assignments of error and issues pertaining to the assignments of error.[13] And he does not support his assertions with citations to applicable legal authority.[14] But even ignoring these deficiencies, his arguments are not persuasive.

Abdelkadir first contends that the commissioner erred in denying his request for training benefits because, he asserts, the commissioner improperly concluded that he failed to satisfy the timing requirement prescribed in RCW 50.22.150(2)(d). We disagree.

Chapter 50.22 of the Employment Security Act establishes a training benefits program to "provide unemployment insurance benefits to unemployed individuals who participate in training programs necessary for their reemployment."[15] RCW 50.22.150— applicable to individuals like Abdelkadir with claims effective before April 5, 2009[16]—

---

[11] King County v. Cent. Puget Sound Growth Mgmt. Hearings Bd., 142 Wn.2d 543, 553, 14 P.3d 133 (2000).

[12] Smith, 155 Wn. App. at 32; Honesty in Environmental Analysis & Legislation v. Cent. Puget Sound Growth Mgmt. Hearings Bd., 96 Wn. App. 522, 526, 979 P.2d 864 (1999).

[13] RAP 10.3(a)(4).

[14] RAP 10.3(a)(6).

[15] RCW 50.22.130.

[16] The "effective date" of an unemployment claim is the Sunday of the calendar week in which the application for benefits is filed. WAC 192-100-035. Abdelkadir submitted his application for unemployment benefits on February 19, 2009.

sets forth the criteria under which an individual is eligible to receive training benefits. According to the statute, a claimant is eligible if, among other things, he or she submits an individual training program to the commissioner "within sixty days after the individual is notified by the employment security department of the requirements of this section."[17]

Here, the commissioner found that "[w]hen the claimant opened his claim for benefits in 2009, [t]he department sent him an *Unemployment Claims Kit* on February 20, 2009. The pamphlet contained information about [t]raining [b]enefits."[18]

This finding is supported by substantial evidence in the record. At the administrative hearing, the ALJ asked Abdelkadir, "When you opened your claim for unemployment benefits, did they send you anything in the mail about how to file your claim?"[19] Abdelkadir responded, "They send me how to—no. They send to me how to file, but—how to file for benefits, yeah, they send to me."[20] Moreover, among the exhibits presented to the ALJ was a document entitled "Date Calculator."[21] This document indicates that the pamphlet was mailed on February 20, 2009. Accordingly, the commissioner did not err in finding that the Department mailed Abdelkadir the *Unemployment Claims Kit* on February 20, 2009.

Abdelkadir argues that no evidence shows that he actually received a pamphlet notifying him of the 60-day deadline. Although the commissioner found that the

---

Accordingly, the effective date is February 15, 2009. Because this effective date precedes April 5, 2009, RCW 50.22.150 applies.

[17] RCW 50.22.150(2)(d).

[18] Clerk's Papers at 63.

[19] CABR at 58.

[20] CABR at 58.

[21] CABR at 136.

Department mailed the kit including the pamphlet to Abdelkadir, he did not expressly find that Abdelkadir received it. Nevertheless, Abdelkadir's testimony that he received information about how to file claims is entirely consistent with his receipt of the kit including the pamphlet on training benefits.[22]

Abdelkadir did not submit his application for training benefits until October 11, 2011, more than two years beyond the 60-day deadline set forth in RCW 50.22.150(2)(d). Therefore, the commissioner properly concluded that Abdelkadir did not satisfy the timing requirement necessary to establish eligibility for training benefits.

But even if Abdelkadir satisfied the timing requirement, he failed to establish his eligibility as a dislocated worker. RCW 50.22.150(2)(a) requires that the claimant be "a dislocated worker as defined in RCW 50.04.075." Pursuant to RCW 50.04.075(1), a "dislocated worker" is a person who:

> (a) Has been terminated or received a notice of termination from employment;
>
> (b) Is eligible for or has exhausted entitlement to unemployment compensation benefits; and
>
> (c) Is unlikely to return to employment in the individual's principal occupation or previous industry *because of a diminishing demand for their skills in that occupation or industry*.[23]

---

[22] See WAC 192-120-010(3) ("Each person who is *mailed* a copy of the information booklet will be responsible for filing claims in accordance with its instructions." (emphasis added)); WAC 192-270-035(1) ("Information about training benefits will be included in the claimant information booklet mailed to you at the time you file your application for unemployment benefits (see WAC 192-120-010). . . . [T]he claimant information booklet is considered your notification of the eligibility requirements for the training benefits program."); see also WAC 192-120-010(1), (2), (5), (7). Abdelkadir provides no authority that the Department is required to use certified or return receipt requested mail.

[23] (Emphasis added.)

Here, the commissioner found that "Truck Drivers, Light or Delivery Services . . . is a demand occupation in the Seattle King County Workforce Development Area and in the Snohomish Workforce Develpment [sic] areas."[24] Alluding to RCW 50.04.075(c), the commissioner concluded that Abdelkadir "has training in a 'demand' occupation," and "is not eligible for training benefits because he is not a dislocated worker as he has work experience in a demand occupation."[25]

The commissioner's finding—that the occupation of truck driver constitutes a demand occupation— is supported by substantial evidence. Exhibits in the record reflect that the occupation of "Truck Drivers, Light or Delivery," qualified as a "demand" occupation in the Seattle King County and Snohomish County workforce development areas.[26]

Abdelkadir contends that his occupation as a driver was not in demand because he was unable to find a job as a driver. He points to his "Job Search Log," an exhibit demonstrating that he applied to numerous driver positions between December 2010 and October 2011.[27] But a commissioner's assessment of whether a job or skill is in demand may also include, as it did here, consideration of local labor market and economic data.[28] The commissioner was entitled to weigh such evidence in the

---

[24] Clerk's Papers at 64.

[25] Clerk's Papers at 67.

[26] CABR at 109-10.

[27] CABR at 114-31.

[28] See RCW 50.22.150(2)(c), (11).

7

Department's favor. We will not substitute our judgment for that of the agency regarding the weight of the evidence.[29]

In light of these findings, the commissioner did not commit legal error by concluding that Abdelkadir was not a dislocated worker. Based upon the finding that his occupation was deemed to be in demand, the commissioner correctly concluded that Abdelkadir did not meet the definition of a dislocated worker.

Abdelkadir contends, finally, that he was entitled to default judgment against the Department because his employer's representative did not appear at the administrative hearing. But Abdelkadir is mistaken. "If a party fails to attend or participate in a hearing or other stage of an adjudicative proceeding, . . . the presiding officer *may* serve upon all parties a default or other dispositive order."[30] Thus, the ALJ was authorized—but not required—to find the Department in default. She also had the discretion to reach the merits of the matter. The ALJ properly exercised her discretion by choosing not to enter a default order.

Affirmed.

WE CONCUR:

---

[29] Smith, 155 Wn. App. at 35.

[30] RCW 34.05.440(2) (emphasis added).