IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| FERRY COUNTY, | ) | |
| | ) | No. 31331-0-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| GROWTH MANAGEMENT HEARINGS | ) | UNPUBLISHED OPINION |
| BOARD; ENVIRONMENTAL AND | ) | |
| LAND USE HEARINGS OFFICE; | ) | |
| CONCERNED FRIENDS OF FERRY | ) | |
| COUNTY; DAVID L. ROBINSON; | ) | |
| FUTUREWISE; SCOTT L. SIMMONS; | ) | |
| RIPARIAN OWNERS OF FERRY | ) | |
| COUNTY and FERRY COUNTY | ) | |
| CATTLEMAN'S ASSOCIATION, INC., | ) | |
| | ) | |
| Appellants. | ) | |

FEARING, J. — We review for the second time the issue of whether, under the Growth Management Act (GMA), Ferry County included best available science (BAS) when failing to identify any important local habitats and species as part of its critical areas ordinance. We also ask whether any departure from best available science by Ferry County was reasonably justified.

In December 2011, the Growth Management Hearings Board (GMHB) found Ferry County noncompliant again with the GMA, while ruling that the county enacted a critical areas ordinance that, without reasonable justification, departed from best available science. Ferry County appealed the GMHB's decision to the superior court, arguing it included best available science in its decision not to designate any species or habitats of local importance, and, if and when it departed from BAS, it did so through a reasoned legislative process. The superior court agreed and reversed the GMHB. Futurewise and Concerned Friends of Ferry County, parties to the GMHB hearing, appeal the superior court decision to this appeals court.

This reviewing court sits in the same position as the superior court and, under the GMA, must bestow limited deference to the GMHB's findings. We hold that the GMHB did not abuse its discretion when ruling Ferry County noncompliant with the GMA. Therefore, we reverse the superior court and affirm the decision of the GMHB.

## FACTS

Ferry County lies in northeastern Washington, bordered on the west by Okanogan County, the east by Stevens County, the south by Lincoln County, and the north by British Columbia. The county was created in 1899 from the western end of Stevens County and is named for Washington's last territorial and first state governor, Elisha P. Ferry.

As of the 2010 census, Ferry County's population was 7,551. 16.7 percent of the county citizens are Native American. The city of Republic, the county's only incorporated community, serves as county seat. The city's population is 1,073. The county comprises 2,257 square miles. Ferry County is the fourth smallest in population of Washington's 39 counties but ranks eighth amongst counties in territory. The county's population density is 3.43 persons per square mile. Only Garfield County, with 3.19 persons per square mile, has a lower population density. By contrast, King County contains 953.3 persons per square mile.

The rugged Kettle River Range covers most of Ferry County and runs from the Canadian Border to the Columbia River, the county's southern edge. Lake Roosevelt, the reservoir created in 1941 by the impoundment of the Columbia River by the Grand Coulee Dam, sits mostly in Ferry County. The Okanogan Highland extends north to south along the western edge of the county. Ferry County boasts the tallest year-round travelable pass in the state—Sherman Pass at 5,575 feet. The south half of Ferry County lies within the boundaries of the Confederated Tribes of the Colville Nation (Colville Tribes) and the north half is largely occupied by the Colville National Forest, leaving only 18 percent of the county's land as taxable.

Ferry County's principal industries are logging and mining, although tourism and recreation are increasing in economic importance. Republic sustains the last operational goldmine in the state. The median income for a household in Ferry County is $36,921.

3

Only Okanogan County, with a median income of $35,161, has a lower income rate.

Twenty and one-half percent of the Ferry County population lives below the poverty line.

We outline some of the provisions of the GMA so that the underlying facts may be better understood. The GMA requires counties to compose plans to responsibly manage their growth and to enact regulations to effectuate those plans. As part of those plans and regulations, local governments by ordinance must designate and protect the habitat of endangered, threatened, and sensitive species (ETS) of fish and wildlife and species of local importance. RCW 36.70A.020(9), (10); RCW 36.70A.060(2); RCW 36.70A.170(1)(d); WAC 365-190-130(2). When designating and protecting these environmentally critical areas, a local government entity must "include the best available science." RCW 36.70A.172. The meaning of this statutory clause is the subject of this appeal.

The Washington Department of Fish and Wildlife (DFW) aids local government entities in identifying critical habitats for priority species. The DFW develops lists, categorized by region, of priority fish and wildlife species requiring protective measures and management guidelines. Priority species include species designated as endangered, threatened, or sensitive (state listed species); species that will be reviewed by DFW for possible listing as endangered, threatened, or sensitive (state candidate species); species or groups of animals susceptible to significant population declines within a specific area or statewide by virtue of their inclination to aggregate (vulnerable aggregations); and

4

species of recreational, commercial, and/or tribal importance that are vulnerable. The

DFW regional lists are called PHS lists, short for priority habitat and species lists, and are

the primary means used by DFW to provide fish, wildlife, and habitat information to

local governments, state and federal agencies, landowners, consultants, and tribes for

land use planning purposes. DFW produces and distributes over 4,000 copies of the PHS

lists annually. DFW's listings include maps of known locations of priority habitats and

species. The DFW complies its PHS data through field observations, scientific survey

mapping projects, and geographic information system technology. The DFW data is

"extensive[ly] peer-review[ed]." Administrative Record (AR) at 658, 690. A county

should consult current information on priority habitats and species identified by DFW.

WAC 365-190-130(4)(a).

In 1993, pursuant to the GMA, Ferry County adopted its first interim critical areas

ordinance, which read, in relevant part, "'The Washington Department of Wildlife

Priority Habitats and Species quad overlay maps will be used to identify [areas with

which endangered, threatened, and sensitive species have a primary association].'" *Ferry*

*County v. Concerned Friends of Ferry County (CFFC)*, 155 Wn.2d 824, 828, 123 P.3d

102 (2005). In 1997, Ferry County adopted its first amendments to the ordinance.

The legislature created a GMHB to review a county's compliance with the GMA.

Under the GMA, a party appearing at a county's GMA proceedings may file a petition

with the GMHB to obtain a ruling that the county failed to comply with the law. On

5

August 29, 1997, Concerned Friends of Ferry County (CFFC), in GMHB Case No. 97-1-0019, petitioned the GMHB for review of Ferry County's critical areas ordinance and amendments. In an order dated July 31, 1998, the GMHB found that Ferry County failed to include best available science when evaluating critical areas and thus the county was noncompliant with RCW 36.70A.172. Under the GMA, the Washington governor holds power to fine a county in violation of the GMA, but typically the only remedy for noncompliance is a GMHB order directing the county to amend its ordinances and plans to become compliant by a deadline date. The GMHB imposed the latter remedy with its July 31, 1998, order.

On December 7, 1998, Ferry County adopted more amendments to its comprehensive plan and critical areas ordinance. The 1998 version listed four ETS species in its designation of critical areas:

Bald Eagle
Ferruginous Hawk
Lynx
Peregrine Falcon

In response, Kevin Robinette, a DFW habitat biologist, sent a December 16, 1998 letter to Ferry County and others. Robinette wrote that Ferry County's amendments remained weak in several areas. He opined that the county's list of four ETS species was incomplete and omitted at least the bull trout. Based on the PHS list, DFW, through Robinette, recommended that Ferry County list twelve species, in its critical areas

6

ordinance, as ETS:

American White Pelican
Bald Eagle
Bull Trout
Ferruginous Hawk
Gray Wolf
Grizzly Bear
Lynx
Peregrine Falcon
Pygmy Rabbit
Sandhill Crane
Upland Sandpiper
Woodland Caribou

The GMHB conducted a hearing to determine if Ferry County had complied with the GMA and its July 31, 1998, order. During the hearing, Ferry County agreed it rejected DFW's recommendations. The county contended:

> "[O]ur scientist states that [the peregrine falcon] is not in the county and doesn't have a primary association meaning it doesn't have nesting habitat in the county. So then we say we have to balance that with what the petitioner has given us. They haven't given us anything to let us think that the Peregrine Falcon is in the county. All that Mr. Robinette states is that the Peregrine Falcon is among a whole slew of species that are in Region 1 and Ferry County is in Region 1. End of story. That is not what the law states. We have our local discretion."

155 Wn.2d at 828-29 n.3.

On September 30, 1999, after the compliance hearing, the GMHB issued another noncompliance order. The GMHB found that the record again provided no evidence that Ferry County considered BAS in designating fish and wildlife habitat conservation areas and identification of priority habitats and species. According to the GMHB, the county

7

provided no rationale for excluding species designated by DFW except vague references to constitutional authority and a local legislative authority's discretion.

In response to the GMHB's September 1999 order, Ferry County obtained two letters from its scientist, Dr. Donald McKnight. Dr. McKnight is a retired wildlife biologist with 30 years of experience with the Alaska Department of Fish and Game. His last position with Alaska was Chief Wildlife Planner. He holds a Ph.D in Wildlife Ecology from Utah State University.

Ferry County asked Dr. Donald McKnight to opine regarding the current status and distribution in Ferry County of bird and mammal species listed by the DFW, with special attention to the potential adverse effects of development in the county upon these animals and their habitats. In two 1999 letters, Dr. McKnight concluded that the woodland caribou, grizzly bear, timber wolves, pygmy rabbit, ferruginous hawk, peregrine falcon, sandhill crane, upland sandpiper, and the American white pelican did not require consideration as ETS species in Ferry County. In making his conclusions, McKnight consulted a book on bird breeding locations published in 1997 and "'various other field guides and wildlife texts.'" 155 Wn.2d at 829. McKnight also spoke to Dana Base, a DFW wildlife biologist for Ferry County, regarding distribution of pygmy rabbits. McKnight did not cite or discuss Base's research or scientific methods. McKnight did not travel to Ferry County.

Ferry County again amended its ordinance on February 28, 2000. The February

28, 2000 version of the ordinance listed only two ETS species, the bald eagle and the lynx. Instead of adding species, the new ordinance removed two species, the ferruginous hawk and peregrine falcon, which the county had included in its December 1998 plan. Ferry County decided to list only the bald eagle and the lynx based on the recommendations contained in the two letters from Dr. Donald McKnight. The county's new list was contrary to evidence that both the bull trout and peregrine falcon were present in Ferry County. The United States Fish and Wildlife Service manages a bull trout recovery area in Ferry County and the Colville Tribes manages peregrine falcons as part of its game bird populations.

At a March 27, 2000, compliance hearing before the GMHB, counsel for Ferry County remarked, "'Now, there is one species that *is* endangered, threatened or sensitive that was not adopted by the county at this time. I can't concede that it's in the county but we are looking at it and it's the bull trout.'" 155 Wn.2d at 829 n.4.

In another order of noncompliance issued on May 23, 2000, the GMHB observed that Ferry County could choose to reject the DFW recommendation, as long as that decision is based on a sound, reasoned process which includes BAS. However, the GMHB concluded that Ferry County's species listing was not based on BAS:

> "The County has consulted with a credentialed biologist, but *the process he undertook to develop his recommendations is inadequate.* There is no evidence in the record that that [sic] the consultant coordinated his recommendation with any other scientists with expertise in Ferry County, such as the Colville [T]ribe, U.S. Forest Service, or the DFW. There is no

9

evidence that any on-site field observations were conducted. *With specific reference to the Peregrine Falcon, his recommendation seems to conflict with activities of the Colville Tribe. Regarding Bull Trout, a sensitive species documented to exist in Ferry County, he makes no mention at all.*

. . . .

The [GMHB] determines the County has not provided a scientific foundation, evidence of analysis, or a reasoned process to justify their listing, while rejecting the recommendations of endangered, threatened and sensitive species and wildlife habitat conservation areas provided by DFW. Such action was a mistake and is clearly erroneous.

. . . . Ferry County is not in compliance with RCW 36.70A.172 regarding protection of wildlife habitat."

155 Wn.2d at 830 (emphasis added). The GMHB directed the county to designate fish and wildlife habitat and species utilizing BAS within 120 days.

Ferry County sought judicial review of the GMHB's May 2000 decision. The county argued that the decision was not supported by sufficient evidence. The superior court affirmed the GMHB's noncompliance order. In doing so, the trial judge reasoned:

"The best available science means more than simply submitting the opinion of some person to a decision maker, in this instance the [GMHB] of County Commissioners. . . . Under no circumstances can it be argued here that the County has submitted any information that would rise to the level of best available science.

. . . .

And the process that was presented to the [GMHB] here is simply a two-page summary letter, two letters by a person identified as a wildlife biologist which justified the County's decision to move away from the science they had previously adopted in their interim critical area ordinances and in the first go rounds of the comprehensive plan, and the basis for that change was in no way explained by the conclusory statements of the biologist that was hired by the County.

I understand . . . the problems of small counties and small towns in meeting this requirement of process. There is no[t] $50,000 that can be allocated to prepare a study. But that doesn't mean that the County is

10

> without any responsibility at all to show not only to the Growth
> Management Hearings [GMHB] but to its citizens that it is complying with
> the law in considering best available science."

155 Wn.2d at 831.

Ferry County appealed the superior court ruling to the Court of Appeals. The Court of Appeals also affirmed the GMHB, holding that substantial evidence supported the GMHB's finding that Ferry County erred in not basing its species listing on BAS. *Ferry County v. Concerned Friends of Ferry County*, 121 Wn. App. 850, 857, 90 P.3d 698 (2004). The state Supreme Court granted review and also affirmed the GMHB. *CFFC*, 155 Wn.2d at 836-37. During argument before the Supreme Court, Ferry County's counsel conceded that the county was incorrect for failing to designate the bull trout as an endangered, threatened or sensitive species. *CFFC*, 155 Wn.2d 824 at 829 n.4.

The *CFFC* court noted that neither the GMHB nor Washington courts had adopted any definition for the "best available science" under RCW 36.70A.172, but instead had employed various factors when reviewing whether a county complied with the GMA. One reason for rejecting an unbending definition was to afford counties discretion when reviewing and applying BAS. *CFFC*, 155 Wn.2d at 834. At the least, however, a local government must "'analyze the scientific evidence and other factors in a reasoned process.'" *CFFC*, 155 Wn.2d at 835 (citation omitted). A county should produce valid scientific information and consider competing scientific information and other factors

11

through analysis constituting a reasoned process. 155 Wn.2d at 835. Ferry County need not develop the scientific information through its own means, but "[b]ecause it chose to disagree with or ignore scientific recommendations and resources provided by the state agencies and the Colville Tribes, which it could do, the county necessarily had to unilaterally develop and obtain valid scientific information." 155 Wn.2d at 836. BAS does not require the use of a particular methodology, but at a minimum BAS requires the use of a scientific methodology. 155 Wn.2d at 837. The steps taken by Ferry County in analyzing the information did not constitute a reasoned process. The record showed no evaluation of the science produced by Dr. McKnight, nor any comparing of the science provided by Dr. McKnight to any other resources, such as science available from state or federal agencies or the Colville Tribe. A "'[c]ounty cannot choose its own science over all other science and cannot use outdated science to support its choice.'" 155 Wn.2d 837-38.

The Supreme Court, in *CFFC*, 155 Wn.2d 824, even refused to accept Dr. McKnight's letter as constituting science because McKnight used no scientific methods in gaining the information and did not discuss the methods used by the sources he cited. McKnight engaged in no site observations. Accordingly, the Supreme Court ruled that substantial evidence supported the GMHB's decision that Ferry County failed to include BAS in its 2000 designation of critical areas. *CFFC*, 155 Wn.2d at 838-39.

12

After the 2005 Supreme Court decision, the legislature provided rulemaking authority to the Department of Commerce. Pursuant to the legislature's direction, the Department of Commerce promulgated criteria for determining which information is BAS. WAC 365-195-900-905.

Since the 2005 Supreme Court decision, Ferry County has amended its comprehensive plan and critical area ordinance many times. On May 18, 2006, Futurewise filed a petition for review in GMHB Case No. 06-1-0003. Futurewise, like Concerned Friends of Ferry County before it, alleged Ferry County failed to comply with the GMA relating to designating critical areas and protecting fish and wildlife habitat conservation areas. On October 6, 2006, the GMHB, in Futurewise's challenge, issued an order finding Ferry County in noncompliance. The GMHB has since found Ferry County noncompliant in one or both of the proceedings on June 9, 2008, February 13, 2009, March 17, 2009, February 23, 2010, and March 3, 2010. Each time, the GMHB found the County failed to comply with the GMA because it refused to include BAS in designating and protecting critical areas, in particular, fish and wildlife critical habitat areas.

In 2010, DFW provided Ferry County an updated list of 31 priority species with federal or state listing status known to inhabit the county. DFW encouraged the county to review the list when amending its critical areas ordinance. The species are:

Bald Eagle

Black-Backed Woodpecker
Bull Trout
California Floater
Columbia Spotted Frog
Common Loon
Fisher
Flammulated Owl
Golden Eagle
Gray Wolf
Grizzly Bear
Ferruginous Hawk
Juniper Hairstreak
Lewis Woodpecker
Loggerhead Shrike
Lynx
Merlin
Merriam's Shrew
Northern Goshawk
Pileated Woodpecker
Peregrine Falcon
Preble's Shrew
Shepard's Parnassian
Silver-Bordered Fritillary
Spotted Frog
Townsend's Big-Eared Bat
Vaux's Swift
Western Grebe
Western Toad
White-Headed Woodpecker
Wolverine
Yellow-Billed Cuckoo

AR at 1484-87. The 2010 DFW list removed from its 1998 DFW list, the American white pelican, pygmy rabbit, upland sandpiper, and woodland caribou. Presumably, the "hawk" included on the 2010 list is the ferruginous hawk.

On July 5, 2010, Karin Divens of DFW sent a letter to Irene Whipple, Planning

Director of Ferry County. The letter discussed an amended critical areas ordinance and

read, in part:

> "We are disappointed to see changes to the latest version . . . , especially when the latest revisions remove much of the previous protections to priority habitats and species. We document our concerns with these changes and offer the following recommendations.
>
> . . . .
>
> In the draft CAO, we do not find that endangered, threatened and sensitive species are designated or protected. WAC 365-190-080(2) defines fish and wildlife habitat critical areas to include "areas with which endangered, threatened, and sensitive species have a primary association."
>
> . . . .
>
> Although, the draft code supports habitat protection for these species, there are not sufficient development regulations to protect these species. Critical areas ordinances play an important role in ensuring the long-term survival of fish and wildlife species in Ferry County. . . . If FWHCAs are designated for upland habitat, projects occurring in these areas can be conditioned to avoid nest disturbance, avoid activities in certain times of year during breeding season, and employ other management or incentive strategies to accommodate fish and wildlife in the developing landscape.
>
> . . . .
>
> WDFW appreciates the inclusion of Habitats and Species of Local Importance under Section 9.00 Fish and Wildlife Habitat Conservation Areas. . . . However, the ordinance fails to designate the majority of locally vulnerable species and their associated habitats found in Ferry County. The classification of "Habitats and species of local importance" appears to defer entirely to a nomination process. Reliance on a future, potential nomination of local habitats or species does not provide protection to those habitats and species currently known to exist in Ferry County, based on BAS.
>
> . . . .
>
> As stated in a previous comment letter . . . , WDFW would like to reiterate that these sections fail to designate the majority of locally vulnerable species and their associated habitats found in Ferry County. . . . We strongly encourage the county to revisit its BAS on record and designate habitats and species of local importance pro-actively.

15

> *WDFW strongly recommends that consultation with agency information be a requirement for applicants seeking development permits for sites with known PHS species. . . . Furthermore, WDFW strongly encourages that the CAO requires WDFW approval for habitat management plans created for sites with state-listed endangered, threatened, or sensitive species."*

AR at 1127-28.

Karin Divens's letter then listed habitats and species that should be identified and protected as priority habitats and species in the Ferry County critical areas ordinance. The species have already been listed herein. The letter proceeded further and read towards its end:

> WDFW strongly recommends the strike out language in Section 7.4.18 be retained as follows: "Fish and wildlife habitat conservation areas <u>shall</u> be protected by buffers as set forth in the Critical Areas Ordinance."

AR at 1132.

On September 10, 2010, and April 4, 2011, the GMHB found Ferry County to continue to be noncompliant with its earlier orders and the GMA.

In 2011, Ferry County conducted a review of 22 of the 31 species identified by DFW for possible local importance designation. The county documented the review in a four-page document. The review noted the protected status of each species. The review designated priority areas for each species, which areas included the entire county, the species' breeding area, the species' foraging areas, or migratory stopovers. The review

16

identified the habitats in which each species could be found. Examples of habitats included wetlands, streams, ponds, riparian areas, meadows, forests, snags, shrub-steppe, grasslands, cliffs, old growth forest, aspen groves, logs, caves, open water, freshwater lakes, and the eastside steppe. The review concluded that the loggerhead shrike, juniper hairstreak, Shepard's parnassian, and ferruginous hawk did not inhabit Ferry County.

The 2011 Ferry County review designated no species as important and did not refer to any science or a scientific methodology. The Ferry County review recommended to exclude the golden eagle as a species of local importance solely upon economic impact. For the justification of omitting several other species, the review reasoned that logging or grazing is "under other jurisdictions." Presumably, the other jurisdictions are the National Forest Service and the Colville Tribes.

In April 2011, Ferry County presented a draft of a new critical area ordinance to DFW biologist Karin Divens. The county based its drafts on the completed review of the 22 species. The proposed ordinance read:

> 2. Ferry County has reviewed the Washington State Department of Fish and Wildlife's Priority Habitat and Species list. There are currently no candidate species or species of concern that have been identified as species of local importance.

AR at 336. The proposed ordinance, however, created a process by which the public could nominate a species or area for inclusion in a critical area as a species or habitat of local importance.

17

No. 31331-0-III
*Ferry County v. Growth Mgmt. Hearings*

Karin Divens urged Ferry County to reconsider its decision to not designate any species. Divens explained in a letter to the Ferry County GMHB of County Commissioners:

> The presence of State, Federal and Tribal land in a County does not diminish the importance of protection of a species and associated habitats on private lands. Local governments should provide clear process for designating and protecting Fish and Wildlife Habitat Conservation by utilizing BAS and developing protective policies and regulations. Unfortunately, wildlife species do not adhere to property boundaries. Protecting habitats with which species have association is very important as wildlife species are extremely mobile and move readily about the landscape. Protecting the habitat will not only benefit state and federally listed species, but will also prevent future listings, while protecting species that are important to the local area and local economy through the influx of consumptive and non-consumptive dollars.
>
> . . . .
> While the greater proportion of land within Ferry County is held in public ownership, these lands are generally higher in elevation and tend to be less ecologically productive compared to areas predominately in private ownership at lower elevation. These low elevation, private lands are characterized by a juxtaposition of agriculture, woodlands, and riparian zones, which are higher in productivity than high elevation forests and are important to wildlife in a variety of ways including providing movement corridors and winter and spring range to migrating deer. . . .
>
> These lowland areas in private ownership also have important riverine and open water habitats and wetlands. There are documented nesting sites for bald eagle and golden eagle in the valley bottoms, as well as documented nesting sites for state listed woodpecker species. These habitats provide for close association of other priority species such as Great Blue Heron and many waterfowl species.

AR at 1134.

On July 25, 2011, the Ferry County Board of Commissioners enacted Ordinance 2011-02, which updated the critical area ordinance and was consistent with the proposed ordinance given to Karin Divens. Critical Areas Ordinance 2011-02 is the ordinance at issue on appeal and reads, in pertinent part:

> An ordinance adopting development regulations as required by RCW 36.70A.030(7).
>
> . . . .
>
> WHEREAS, RCW 36.70A.172 states "In designating and protecting critical areas under this chapter, counties and cities shall include the best available science in developing policies and development regulations to protect the functions and values of critical areas. . . .
>
> WHEREAS, in order to come into compliance with the Growth Management Act per the Growth Management Hearings Board Order, Sections 2.00, 3.00, 4.00, 4.01, 8.03, 9.00, 9.01, 9.02, 9.03, 9.04 were amended. . . .
>
> WHEREAS, the measures adopted through this ordinance are designed to meet these requirements.
>
> NOW, THEREFORE, BE IT ORDAINED by the Board of Ferry County Commissioners, as follows:
>
> . . . .
>
> **Section 9.00 FISH AND WILDLIFE HABITAT CONSERVATION AREAS**
>
> Fish and wildlife habitat conservation areas are defined as land management areas for maintaining species in suitable habitats within their natural geographic distribution so that isolated subpopulations are not created. . . .
>
> To maintain viable populations of wildlife species, there must be adequate environmental conditions for reproduction, foraging, resting, cover, and dispersal of animals at a variety of scales across the landscape. Key factors affecting habitat quality include the presence of essential resources such as food, water, and nest building materials, the complexity of the environment, and the presence or absense [sic] of predator species and diseases. Ferry County protects habitat for fish and wildlife species using this ordinance and associated protection measures described below.

Ferry County has a very high proportion of federal, state and other publicly and tribally owned land. These lands are generally managed for the conservation of wildlife habitat. Consequently, one of Ferry County's approaches to protecting all wildlife habitat types is to depend on the management of these lands by the responsible agency; i.e. Colville Confederated Tribes, U.S. Fish and Wildlife, U.S. Forest Service, U.S. Bureau of Land Management, Washington Department of Fish and Wildlife, Washington Department of Natural Resources, etc.

**Section 9.01 CLASSIFICATION**

The following six habitat areas shall be classified fish and wildlife habitat conservation areas.

**1) Areas with which endangered, threatened and sensitive species have a primary association.**

a) Federally designated endangered and threatened species are those fish and wildlife species identified by the U.S. Fish and Wildlife Service and the National Marine Fisheries Service that are in danger of extinction or threatened to become endangered. The U.S. Fish and Wildlife Service and the National Marine Fisheries Service should be consulted for current listing status.

b) State designated endangered. threatened, and sensitive species are those fish and wildlife species native to Ferry County identified by the Washington Department of Fish and Wildlife, that are in danger of extinction, threatened to become endangered, vulnerable, or declining and are likely to become endangered or threatened in a significant portion of their range within the county without cooperative management or removal of threats. . . .

**2) Habitats and species of local importance.** There are habitats or species that due to their declining population, sensitivity to habitat manipulation or other values make them important on a local level. Habitats of local importance may include a seasonal range or habitat element with which a given species has a primary association, and which, if altered, may reduce the likelihood that the species will maintain and reproduce over the long term. These habitats and species may be identified and nominated for inclusion or removal as Habitats and Species of Local Importance by state agencies, Ferry County, and local individuals, organizations or tribes. Review of a Habitat and Species of Local Importance application is a legislative action, and shall be processed during

20

the Comprehensive Plan amendment cycle. Upon adoption of a compliant Critical Areas Ordinance, the County upon receipt of a completed nominating or removal form for each species, habitat and/or area will review the application using the following process.

**a) Petition to nominate or remove an area or a species to this category shall contain all of the following for each species or habitat:**

. . . .

Final approval by the Board of County Commissioners of nominations will become designated "Habitats and Species of Local Importance," and will be subject to the provisions of this ordinance. Habitats and species nominated and afforded protection under the category "Habitats and Species of Local Importance" shall then be subject to review under this ordinance.

. . . .

**Section 9.02**

Habitat areas that meet the above classification criteria [Section 9.01] are designated as fish and wildlife habitat conservation areas and are subject to the provisions of this ordinance and shall be managed with the Best Available Science on a [case] by [case] basis.

**BIBLIOGRAPHY**

The following documents are referred to in this ordinance and are included by reference for use or guidance. Changes to these documents by the author or authoring agency require review by Ferry County for effect on this ordinance and possible need for other adjustments to the ordinance before being approved for inclusion in the ordinance by act of the Board of County Commissioners:

. . . .

Section 3.00:
•    Natural Resources Conservation Service Field Office Technical Guide
•    . . . .
•    WAC 232-12-014, Wildlife Classified as Endangered Species, 01-30-06;
•    WAC 232-12-297, Endangered, Threatened, and Sensitive Wildlife Species Classification, 01-28-02;

21

• Washington Department of Fish and Wildlife, Classification System for Priority Habitat, updated 2/4/98;
• Washington Department of Fish and Wildlife, Priority Habitat and Species Program, initiated 1989;

. . . .

Section 4.02:
• WAC 365-195-905, Criteria for Determining Which Information is the Best Available Science, 08-27-00;

**Classification of Risk to Structural Development;**

Section 9.00:
• WAC 365-190-080(5), Minimum guidelines to classify agriculture, forest, mineral lands, and critical areas,–Critical Areas, Fish and wildlife conservation areas, 04-15-91;

Section 9.01:
• RCW 90.58. Shoreline Management Act, 1971;
• WAC 222-16.031, Interim water type system, 07-01-05;
• WAC 232-12-011, Wildlife classified as protected shall not be hunted or fished, 01-30-06;
• WAC 232-12-014, Wildlife classified as endangered species, 01-30-06;
• WAC 365-190-080 (5) (c)(ii), Minimum guidelines to classify agriculture, forest, mineral lands and critical areas,–Critical Areas, Sources and methods–species of local importance; 04-15-91;
• Washington Department of Fish and Wildlife Maps (Fish Planting);

Section 9.04
• Divens, Karin, Department of Fish and Wildlife Priority Habitats and Species Biologist, letter to Irene Whipple, 3-25-10
• Transcription of discussion with Karin Divens at the Planning Commission regular meeting; 4-14-10;
• Divens, Karin, Department of Fish and Wildlife Priority Habitats and Species Biologist, letter to Honorable Joe Bond, 4-26-10

The Ferry County Board of Commissioners attached to Ordinance Nos. 2011-02

No. 31331-0-III
*Ferry County v. Growth Mgmt. Hearings*

findings of fact, which read:

Findings of Fact:
(Exhibit A)

In designating and protecting the functions and values of critical areas, Ferry County has included Best Available Science (BAS) per RCW 36.70A.172 and WAC 365-195 in developing policies and development regulations.

In considering BAS, Ferry County has consulted numerous times with WDFW. . . .

Ferry County's land base is predominately State and federal owned. The Board finds that the economic base is hampered and in decline due to the lack of private ownership of the land. In RCW 36.70A.010, "the legislature finds that uncoordinated and unplanned growth, together with a lack of common goals expressing the public's interest in the conservation and the wise use of our lands, pose a threat to the environment, sustainable economic development, and the health, safety, and high quality of life enjoyed by residents of this state. It is in the public interest that citizens, communities, local governments, and the private sector cooperate and coordinate with one another in comprehensive land use planning. Further, the legislature finds that it is in the public interest that economic development programs be shared·with communities experiencing insufficient economic growth." The Board finds that human health and safety concerns and sustainable economic development is of the utmost importance to Ferry County.

. . . .

Ferry County has reviewed the changes and finds that CAO is consistent and implements the goals and policy of the comprehensive plan.

. . . .

Ferry County finds that it must balance the goals of the GMA while giving a high degree of weight to local conditions.

Ferry County has removed most RCW and WAC citations and replaced this with language consistent with current law and rule as to create an opportunity for local public participation and local deference as laws and rules change in the future.

. . . .

**Changes to the Critical Areas Ordinance: (findings)**

1. In accordance with WAC 232-12-014 and WAC 232-12-011, Ferry County adopted the Washington State Fish and Wildlife recommendations pertaining to the Endangered, Threatened and Sensitive species list. Ferry County recognizes that the Endangered, Threatened, and Sensitive species list changes periodically, therefore Ferry County chose not to list the species individually. Ferry County will consult with and use the most current Department of Fish and Wildlife Endangered, Threatened, and Sensitive species list.

2. Ferry County has reviewed the Washington State Department of Fish and Wildlife's Priority Habitat and Species list. There are currently no candidate species or species of concern that have been identified as species of local importance.

. . . .

8. For organizational purposes, in section 4.01, language was removed to emphasize Ferry County's use of Best Available Science and for consistency and accuracy of current law and regulation, as well as consistency internally within revised CAO.

. . . .

11. Section 9.01(2), new language was added to illustrate Ferry County's extensive efforts to protect Fish and Wildlife conservation areas. WAC references were removed to reflect current rules and to eliminate inconsistent language. Language was deleted to reflect a review of all 29 species associated with Ferry County being reviewed utilizing BAS and giving justification for any deviation from BAS. Language was added and organizational changes were made to simplify the CAO for use and understanding in protecting species and habitat. . . .

. . . .

14. In Section 9.02 of the Critical Areas Ordinance, language was added to include and utilize Best Available Science to properly designate Fish and Wildlife Habitat.

16. In Section 9.04 of the Critical Areas Ordinance, Ferry County removed language and added a map to define and specify the location of Fish and Wildlife Conservation Areas. Ferry County removed inaccurate information and added relevant information to show that the Priority Habitats and Species program will be used to better determine the mapped polygon areas for Endangered, Threatened and Sensitive species. Language was added to clarify for the general public the Habitat and Management plan process.

DFW Biologist Karin Divens had recommended to Ferry County that the critical areas ordinance refer explicitly to the habitats primarily associated with the ETS species so that review of a development application is triggered not just by the occurrence of an individual species, some of which are highly mobile, but by considering development impacts to primary habitat for that species. Section 9.01 of Ordinance 2011-02 merely refers to species listings maintained by named federal and state agencies but does not provide any methodology for locating habitat areas. In reading Section 9.01(1), one cannot discern what habitat areas or locations are designated. Section 9.01 also contains no list of priority species with endangered, threatened or sensitive status.

Critical Areas Ordinance 2011-02, section 9.04 refers to a map, titled Fish and Wildlife Habitat Conservation Areas of Ferry County, as showing the approximate location and extent of fish and wildlife habitat areas for endangered, threatened and sensitive species, but the map is not contained in the record. On March 2, 2011, the Colville Tribes commented on the critical areas ordinance, stating that section 9.04 needs to have the Tribal Critical Habitat maps. Although the ordinance contains these habitat maps, the record does not reflect Ferry County's consideration of the tribal critical habitat maps.

Ferry County, by Resolution 2011-41, entered additional findings of fact in support of Ordinance 2011-02. The findings read, in part:

> WHEREAS, based on public input, review and analysis of best

available science (BAS) pertinent to Ferry County and other relevant information, the Planning Department developed the Critical Areas Ordinance and Comprehensive Plan proposal tailored to address the compliance orders;

. . . .

4. The planning Commission reviewed the BAS as provided by the WDFW, the Nature Serve [sic], and the U.S. Fish and Wildlife Bull Trout Recovery plan in consideration of the "Species of Concern' and 'Candidate Species' on the WDRW Priority Habitat and Species List (PHS list) for Ferry County. The Review and findings of this BAS is in the Record as a document titled "2011 Ferry County Review of Washington Fish and Wildlife PHS Candidate Species for Possible Habitats and Species of Local Importance Designation."

AR at 1539.

In the resolution, the Ferry County GMHB of Commissioners declared:

In review of the BAS in the Record:

a. It was found that there was NO specific mapped area in Ferry County for 12 of the State candidate species to the PHS list for Ferry County.

b. It was found that specific mapped area was unknown for 2 of the State candidate species on the PHS list for Ferry County.

c. It was found that current breeding habitat status is unknown for 10 of the State candidate species on the PHS list for Ferry County.

d. It was found that there are Riparian and Wetland buffers in place concerning 6 of the State candidate species on the PHS list for Ferry County.

e. It was found that there are no buffer recommendations for six of the State candidate species on the PHS list for Ferry County.

f. It was found that protection of 5 of the State candidate species on the PHS list for Ferry County would have negative impact to the recreational and tourism economy or the entire economy of Ferry County.

g. It was found that 2 of the State candidate species on the PHS list for Ferry County are extirpated.

h. It was found that BAS did not provide specific protection measures or management plans for 7 of the State candidate species on the PHS list for Ferry County.

    i. It was found that in the U.S. Fish and Wildlife documents that there is no designated critical habitat for bull trout in Ferry County even though bull trout is a State candidate species on the PHS list for Ferry County.

    k. It was found that the breeding habitat for 1 of the State candidate species on the PHS list for Ferry County is actually in the Okanogan County portion of the Colville Confederated Tribes Reservation.

    l. It was found that species distribution does not include Ferry County for 2 of the State Candidate species on the PHS list for Ferry County.

AR at 1539.

According to the Ferry County Board of County Commissioners, BAS reflected that none of the 22 "State Candidate Species" warrant designation as "Species of Local Importance." AR at 1539-40. The record, however, does not address why the county analyzed only 22 of the 31 species the DFW listed on its PHS list as occurring in Ferry County. The county's review did not include the bald eagle, peregrine falcon, flammulated owl, common loon, fisher, gray wolf, grizzly bear, or lynx.

Ferry County asserted the July 2011 ordinance and resolution brought it into compliance with the GMA's critical areas provision. Thus, Ferry County moved the GMHB in both the Futurewise and the Concerned Friends of Ferry County cases to find it compliant with the GMA. Both petitioners objected to Ferry County's motion, arguing that the county's refusal to follow DFW's recommendations was not supported by BAS or a reasoned process.

On October 7, 2011, the GMHB conducted a compliance hearing in the consolidated Futurewise and Concerned Friends of Ferry County cases. By written

27

decision on December 1, 2011, the GMHB agreed with Futurewise and Concerned

Friends and held the July 2011 critical area ordinance noncompliant with the GMA. The

December 1 decision is what this court reviews. Portions of the decision read:

## II. BURDEN OF PROOF

For purposes of Board review of the comprehensive plans and development regulations adopted by local governments in response to a noncompliance finding, the presumption of validity applies and the burden is on the challenger to establish that the new adoption is clearly erroneous in view of the entire record before the board and in light of the goals and requirements of the chapter.

In order to find the County's action clearly erroneous, the Board must be "left with the firm and definite conviction that a mistake has been made."

Within the framework of state goals and requirements, the Board must grant deference to local governments in how they plan for growth. . . .

## IV. DISCUSSION

If a county chooses to disagree with or ignore scientific recommendations and resources provided by state agencies or Indian tribes, which a county could do, the county must unilaterally develop and obtain valid scientific information. The GMA does not require a county to follow BAS; rather it is required to "include" BAS in the record. A county may depart from BAS if it provides a reasoned justification for such departure.

. . . .

The Department of Commerce Minimum Guidelines also state that counties and cities should identify and classify seasonal ranges and habitat elements where federal and state listed endangered, threatened and sensitive species have a primary association and which, if altered, may reduce the likelihood that the species will persist over the long term. Counties and cities should consult current information on priority habitats and species identified by the Washington Department of Fish and Wildlife (WDFW). The goal of fish and wildlife habitat conservation is to manage land so as to maintain species in suitable habitats within their natural geographic distribution so that isolated subpopulations are not created.

28

. . . .

### 3. Recent Legislative Action by Ferry County

On July 25, 2011, Ferry County passed Critical Areas Ordinance #2011-02 amending Critical Areas Ordinance # 2009-05, Sections 9.00, 9.01, 9.02, 9.03, and 9.04, relating to Fish and Wildlife Conservation Areas.

On July 25, 2011, Ferry County adopted Resolution No. 2011-41 entitled "Findings of Fact for the Comprehensive Plan and Critical Areas Ordinance Relating to Fish and Wildlife Habitat Conservation Areas."

. . . .

### 5. Board Analysis–Designation of Fish and Wildlife Habitat Conservation Areas

The GMA requires counties to both Designate <u>and</u> Protect Fish and Wildlife Habitat Conservation Areas (FWHC Areas). Designation is a fundamental first step that informs County decision makers and the public on determining the location of FWHC Areas. The GMA's mandate to protect FWHC Areas cannot be fulfilled unless people can figure out where FWHC Areas are located.

When designating Fish and Wildlife Habitat Conservation Areas, Best Available Science (BAS) must be included in the record–the County must rely on scientific information and must analyze that information using a reasoned process, i.e., a scientific methodology. *Ferry County v. Concerned Friends of Ferry County*, 155 Wn.2d. 824, 836-837 (2005).

. . . .

In the present case, Ferry County made the following Finding of Fact:

WHEREAS, based on public input, review and analysis of best available science (BAS) pertinent to Ferry County and other relevant information, the Planning Department developed the Critical Areas Ordinance and Comprehensive Plan proposal tailored to address the compliance orders;

But the Board must examine the entire record in this case to determine if Petitioners have satisfied their burden to demonstrate that the County failed to include Best Available Science as to FWHC Area designations and policy development.

Critical Areas Ordinance # 2011-02, Section 9.01 states that six habitat types shall be classified fish and wildlife habitat conservation areas:

1) Areas with which endangered, threatened and sensitive species have a primary association.

2) Habitat and species of local Importance.

29

. . . .

Ordinance 2011-02, Section 9.02 entitled "DESIGNATION" provides:

Habitat areas that meet the above classification criteria [Section 9.01] are designated as fish and wildlife habitat conservation areas and are subject to the provisions of this ordinance and shall be managed with the Best Available Science on a site by site basis.

Thus, Section 9.02 "DESIGNATION" appears to be the main operative provision designating FWHC Areas in Ferry County and works in tandem with Section 9.01 "Classification."

### Designation—Endangered, Threatened and Sensitive Species

However, the Section 9.01 habitat classification "Areas with which endangered, threatened and sensitive species have a primary association," and explanatory language contains no reference to "**habitats**" but refers only to "**species.**" WDFW Biologist Karin Divens had recommended "referring explicitly to the **habitats** primarily associated with the E/T/S species" so that "review of a development application is triggered not just by the occurrence of an individual **species** (some of which are highly mobile), but by considering development impact to primary **habitat** for that species." There is no evidence in the record of any scientific information that refutes the science provided by the WDFW Biologist on designating E/T/S **habitats.**

Ferry County has departed from or ignored the scientific recommendation by WDFW to designate E/T/S **habitats** not just **species**, without any reasoned justification. This ordinance language in Section 9.01(1) also contains no indication that BAS was included or analyzed with a reasoned process.

Section 9.01(1) merely refers to E/T/S species "listings" maintained by named federal and state agencies but does not provide any methodology for locating habitat areas. In reading the current language of Section 9.01(1), one cannot discern what habitat areas or locations would meet the classification criteria for an "Area with which endangered, threatened and sensitive species have a primary association." Also, there are no maps showing the locations of such designated areas. Thus, contrary to WAC 365-190-080(4), the County did not use any maps and did not use performance standards to designate Fish and Wildlife Habitat Conservation Areas.

Moreover, WAC 365-190-130(4)(a) states that counties should identify and classify seasonal ranges and **habitat** elements where federal and state listed endangered, threatened and sensitive (ETS) species have a primary association and which, if altered, may reduce the likelihood that the species will persist over the long term. But the ordinance language In Section 9.01 does not identify any seasonal ranges or habitat elements.

CAO Section 9.01 also contains no list of Priority Species with Endangered, Threatened or Sensitive status although such a list had been provided by WDFW to Ferry County.

### Designation–Habitats and Species of Local Importance

Regarding the classification "Habitats and species of local importance," CAO Section 9.01(2) provides:

These habitats and species may be identified and nominated for inclusion or removal as Habitats and Species of Local Importance by state agencies, Ferry County and local individuals, organizations or tribes. Review of a Habitat and Species of Local Importance application is a legislative action, and shall be processed during the Comprehensive Plan amendment cycle.

Section 9.01(2)(a) requires submission of a petition to nominate or remove an area or a species, containing a number of items.

WAC 365-190-130(4)(b) states that counties and cities should identify, classify and designate locally important habitats and species. Further, counties "should consult current information on priority habitats and species identified by the Washington state department of fish and wildlife."

WDFW Biologist Karin Divens had recommended in pertinent part as follows:

WDFW is concerned that the process for nominating Habitats and Species of Local Importance is overly burdensome. As written, the nomination process is onerous because it would require applicants to propose specific and relevant protection regulations, propose management strategies, provide specific habitat locations, and requires an agency or qualified professional to prepare the information. The only appropriate requirement for designation is that the designation be based on Best Available Science. WDFW has

31

not developed management strategies for all priority species and habitats and therefore, strongly suggests elimination of the management strategy requirement. The term is not defined, and keeping this as a precondition will likely result in the loss of many critical fish and wildlife resources. . . Limiting designation to mapped species and habitats is an overly burdensome expectation to include in a nomination process . . . not all habitats and species are mapped, and maps cannot account for the movement of species seasonally and over time. Therefore, we always recommend local governments designate species that are vulnerable to future listing, such as Candidate species, and include a site-specific review to verify the presence of a designated FWHCA. This should be the same process for a listed species.

The ordinance language in Section 9.01 contains no indication that BAS was included or analyzed with a reasoned process. The management strategy requirement in Section 9.01(2) is contrary to the strong scientific recommendation that (1) management strategies do not exist for some species and habitats and (2) keeping this requirement will likely result in the loss of many critical fish and wildlife resources. Furthermore, limiting designation to mapped species and habitats is a departure from BAS since maps alone cannot account for the movement of species seasonally and over time.

Moreover, as to the CAO's designation of Habitats and Species of Local Importance, WDFW stated:

WDFW would like to reiterate that these sections fail to designate the majority of locally vulnerable species and their associated habitats found in Ferry County. The classification of "Habitats and species of local importance and habitats for species of local importance" appears to defer entirely to a nomination process. Reliance on a future, potential nomination of local habitats or species does not provide protection to the habitats and species currently known to exist in Ferry County, based on best available science. We strongly encourage the county to revisit its BAS on record and designate habitats and species of local importance pro-actively.

In 2010, WDFW provided the County with a list of 31 Priority Species known to occur in Ferry County with Federal and/or State listing Status (ETS). In 2011, the County completed a review of 22 species for possible local importance designation. None of those species were designated, and the County's reasoning did not include a reference to identifiable BAS or to a scientific methodology. For example, as to the decision not to list the Golden Eagle, the reasoning was solely economic impact, with no reference to science. For several other species the reasoning was that logging or grazing is "under other Jurisdictions," with no reference to science. Under the GMA, Ferry County can list whatever species it deems appropriate if it supports its decision by BAS.

Ferry County asserts in briefing that the "reasoned justification" for departing from BAS does not need to be based on science itself, and the County cites to *Swinomish Indian Tribal Community et al. v. WWGMHB*, 161 Wn.2d 415, 431, [166 P.3d 1198] (2007). In the *Swinomish,* the Washington Supreme Court held that the GMA's requirement to **protect** critical areas does not impose a requirement to **enhance** critical areas by, for example, requiring farmers to replant areas adjacent to streams that were lawfully cleared in the past. The omission of mandatory stream buffers from Skagit County's critical areas ordinance was a justified departure from Best Available Science because the mandatory buffers would impose an obligation to enhance that goes above and beyond the GMA's duty to **protect**. In other words, BAS needs to be included in the decision-making process, but science cannot create new duties not imposed by law.

In the present case, the record contains BAS relating to the designation and protection of Fish and Wildlife Habitat Conservation Areas. But nothing in the record suggests that this BAS would create any new duties not already imposed by law.

In 2005, the Washington Supreme Court held in a case arising out of Ferry County that BAS requires the use of a scientific methodology and a reasoned process. A county may depart from BAS if it provides a **reasoned justification** for such departure. In the 2005 Supreme Court decision, the court noted:

> The fact that the county's listing omits both the peregrine falcon and the bull trout, both of which are ETS species known to be present in Ferry County, further supports that the listing was not generated using BAS.

These holdings of the Supreme Court are mandatory authority, and this Board must adhere to and apply the Supreme Court's ruling. In the present case, Ferry County failed to provide a reasoned justification for departing from the Best Available Science in designating habitats and species known to be present in Ferry County. As in the earlier Ferry County Supreme Court case, the omission here of all 22 species of possible local importance supports a finding that the ordinance was not generated using BAS.

. . . . There is no substantial evidence in the record to support a County finding that BAS was included in designating Ferry County's Fish and Wildlife Habitat Conservation areas.

Ferry County failed to include the Best Available Science in designated (1) Areas where ETS species have a Primary Association, and (2) Habitats and Species of Local Importance. Ordinance 2011-02 designations of Fish and Wildlife Habitat Conservation Areas (relating to ETS Habitats and Species, and Species of Local Importance) were clearly erroneous in view of the entire record before the [GMHB] and in light of the goals and requirements of the Growth Management Act.

On remand, Ferry County should provide a reasoned justification for departing from Best Available Science in designating Fish and Wildlife Habitat Conservation Areas.

Clerk's Papers (CP) at 13-28.

By this new lawsuit, Ferry County seeks review of the GMHB's Compliance Order, entered December 1, 2011. The superior court granted Ferry County partial summary judgment and ruled that the county had included BAS or departed from that science for a justified reason when designating critical habitats. Accordingly, the court reversed the GMHB. Futurewise and Concerned Friends of Ferry County appeal.

34

## LAW AND ANALYSIS

### Assignments of Error

Futurewise raises a procedural argument, that, if accepted, would end our review and require a ruling in its favor. Futurewise contends that the GMHB's factual findings are verities on appeal because Ferry County failed to assign error to any of the Board's findings. The GMHB entered a finding of fact that "no substantial evidence in the record . . . support[ed] a County finding that BAS was included in designating Ferry County's Fish and Wildlife Habitat Conservation Areas." CP at 28. Ferry County does not specifically assign error to the finding.

RAP 10.3(h) applies to appeals from a superior court's review of administrative agency rulings and reads:

> **(h) Assignments of Error on Review of Certain Administrative Orders.** In addition to the assignments of error required by rule 10.3(a)(3) and 10.3(g), the brief of an appellant or respondent who is challenging an administrative adjudicative order under RCW 34.05 or a final order under RCW 41.64 shall set forth a separate concise statement of each error which a party contends was made by the agency issuing the order, together with the issues pertaining to each assignment of error.

RAP 10.3(h) applies to a party contending that the administrative agency decision was in error, regardless of the party's designation as appellant or respondent before the appellate court. 3 KARL B. TEGLAND, WASHINGTON PRACTICE: RULES PRACTICE RAP 10.3 drafters' cmt. 1994 amends. at 54 (7th ed. 2011). In turn, RAP 10.3(g) demands a separate assignment of error for each finding of fact a party contends was improperly

made must be included with reference to the finding by number. Unchallenged agency factual findings are verities on appeal. *Hilltop Terrace Homeowner's Ass'n v. Island County*, 126 Wn.2d 22, 30, 891 P.2d 29 (1995). If we strictly followed RAP 10.3, we would affirm the GMHB's finding that the 2011 ordinance did not include BAS and thereby affirm the Board.

Other court rules apply. RAP 10.3(g) permits review when the claimed error is clearly disclosed in a related issue. RAP 1.2 directs this court to liberally interpret these rules. These RAPs allow appellate review of administrative decisions in spite of technical violations when a proper assignment of error is lacking but the nature of the challenge is clear and the challenged finding is set forth in the party's brief. *Fuller v. Emp't Sec. Dep't*, 52 Wn. App. 603, 605-06, 762 P.2d 367 (1988).

In a section labeled assignment of errors in its brief, Ferry County asked whether "BAS regarding habitats and species of local importance [was] included in the record or was there any BAS that was not included in the record?" Br. of Resp't at 2. In the argument section of the brief, the county "clearly discloses" the error it alleges when it argued it complied with the GMA mandate to include BAS in the record. Futurewise thoroughly addressed the issue in its brief and shows no prejudice by Ferry County's failure to strictly follow the rules. Therefore, we reject Futurewise's argument and address the merits of the appeal.

No. 31331-0-III
*Ferry County v. Growth Mgmt. Hearings*

Overview of Growth Management Act

Ferry County contends the GMHB committed at least four errors. First, the Board concluded that the GMA requires counties to designate and protect habitats or species of local importance, when the law contains no such requirement. Second, the GMHB impermissibly shifted the burden of proof to the county and it relieved Futurewise from establishing that the county omitted any BAS from the record. Third, contrary to the GMHB's finding, the county included BAS in the record. Fourth, the county engaged in a reasoned legislative process when it departed from the protections BAS recommended.

Before addressing Ferry County's four discrete assignments of error, we review more of Washington's Growth Management Act (GMA), chapter 36.70A RCW, which controls our decision. The Washington legislature adopted the GMA in two installments, during 1990 and 1991, in response to public concerns about rapid population growth and increasing development pressures in the state, especially in the Central Puget Sound region. Alan D. Copsey, *Including Best Available Science in the Designation and Protection of Critical Areas Under the Growth Management Act*, 23 SEATTLE U. L. REV. 97, 97 (1999). Passage of the Act demanded political compromises that create internal inconsistencies, vague language, and gaps in the Act. Richard L. Settle, *The Growth Management Revolution in Washington: Past, Present, and Future*, 16 U. PUGET SOUND L. REV. 867, 872 (1993). The Act contains awkward sentences and murky words.

The central purpose of the GMA is to coordinate land use, zoning, subdivision,

37

planning, development, natural resources, public facilities, and environmental laws into one scheme in order to concentrate new development in compact urban growth areas, while conserving environmentally critical land and valuable natural resources. Richard L. Settle, *supra* at 872-73. As part of this planning system, "local governments also must designate urban growth areas, forest lands, agricultural lands, mineral resource lands and *critical areas*, and develop regulations to assure their conservation." 24 TIMOTHY BUTLER AND MATTHEW KING, WASHINGTON PRACTICE: ENVIRONMENTAL LAW AND PRACTICE § 18.1 (2nd ed. 2007) (emphasis added). Our appeal concerns critical areas.

Since the GMA was directed at congestion in King, Pierce, and Snohomish counties, application of the Act to rural eastern Washington has created controversy. Two former members of the state high court, Justice J. Johnson and Justice R. Sanders, have penned or joined several dissents that question the wisdom of implementing the GMA in northeastern counties of the state. *See CFFC*, 155 Wn.2d at 836-37 (Johnson, J., dissenting (opinion, pp. 844-56); *Kittitas County v. E. Wash. Growth Mgmt. Hearings Bd.*, 172 Wn.2d 144, 256 P.3d 1193 (2011) (Johnson, J., dissenting (opinion, pp. 191-207). Eastern and western Washington may have a difficult marriage, but we remain one state subject to the same law.

Under the GMA, all Washington counties must adopt development regulations that designate and protect critical areas, including fish and wildlife habitat conservation areas. RCW 36.70A.060(2). A number of sections within the GMA, beginning with

38

RCW 36.70A.060, address the designation of environmentally "critical areas." RCW

36.70A.060 reads:

> (2) Each county and city shall adopt development regulations that protect *critical areas* that are required to be designated under RCW 36.70A.170. For counties and cities that are required or choose to plan under RCW 36.70A.040, such development regulations shall be adopted on or before September 1, 1991. . . .
> (3) Such counties and cities shall review these designations and development regulations when adopting their comprehensive plans under RCW 36.70A.040 and implementing development regulations under RCW 36.70A.120 and may alter such designations and development regulations to insure consistency.

(Emphasis added.) RCW 36.70A.170 repeats the demands of RCW 36.70A.060.

RCW 36.70A.170 provides:

> (1) On or before September 1, 1991, each county, and each city, shall designate where appropriate:
>      . . . .
>      (d) Critical areas.
>      (2) In making the designations required by this section, counties and cities shall consider the guidelines established pursuant to RCW 36.70A.050.

RCW 36.70A.030(5) defines "critical areas" as:

> (5) "Critical areas" include the following areas and ecosystems:
> (a) Wetlands; (b) areas with a critical recharging effect on aquifers used for potable water; (c) fish and wildlife habitat conservation areas;
> (d) frequently flooded areas; and (e) geologically hazardous areas. . . .

This appeal concerns only fish and wildlife habitat conservation areas.

The first step required for a county's implementation of the GMA is the

designation and adoption of interim development regulations to protect natural resource

lands and critical areas. RCW 36.70A.060(2); RCW 36.70A.170. This step comes first in order to preclude irreversible environmental harm during the lengthy preparation process of GMA comprehensive plans and development regulations. Settle, *supra* at 908.

GMHBs are authorized to invalidate noncomplying comprehensive plans and development regulations. *Swinomish Indian Tribal Cmty.*, 161 Wn.2d at 423. The Board presumes the validity of development regulations and related amendments that a county adopts under the GMA. RCW 36.70A.320(1). The Board must find compliance unless a county's action is clearly erroneous. RCW 36.70A.280(1)(a), .320(3). A county's action is clearly erroneous if the Board has a firm and definite conviction that the county made a mistake. *Thurston County v. W. Wash. Growth Mgmt. Hearings Bd.*, 164 Wn.2d 329, 340-41, 190 P.3d 38 (2008); *Olympic Stewardship Foundation v. W. Wash. Growth Mgmt. Hearings Bd.*, 166 Wn. App. 172, 187, 274 P.3d 1040, *review denied*, 174 Wn.2d 1007 (2012). In 1997, the legislature amended the GMA, requiring the GMHB reviewing local government compliance with the GMA to "grant deference to counties and cities in how they plan for growth," provided those plans are "consistent with the requirements and goals of [the GMA]." RCW 36.70A.3201.

Before this court, Ferry County emphasizes the need for the GMHB to defer to the county's decisions. The county provides no analysis as to the line between according deference and ruling there was error, and suggests the Board must grant unlimited deference. Nevertheless, counties remain constrained by the goals and requirements

of the GMA. *King County. v. Cent. Puget Sound Growth Mgmt. Hearings Bd.*, 142

Wn.2d 543, 561, 14 P.3d 133 (2000). A county may not "point to any evidence and

demand unbounded deference." *Kittitas County*, 172 Wn.2d at 157.

One disappointed with the GMHB's ruling may seek redress from the superior

court. This reviewing court reviews decisions of the GMHB under the Administrative

Procedure Act (APA), chapter 34.05 RCW, which calls for a review of the record created

before the GMHB—not the decision of the superior court. *Buechel v. Dep't of Ecology*,

125 Wn.2d 196, 202, 884 P.2d 910 (1994). Ferry County, the party challenging the

GMHB decision, bears the burden of proving the decision invalid. RCW

34.05.570(1)(a). The court must grant relief from the decision if, as relevant here:

> (d) The agency has erroneously interpreted or applied the law;
> (e) The order is not supported by evidence that is substantial when
> viewed in light of the whole record . . . ; [or]
>     . . . .
> (i) The order is arbitrary or capricious.

RCW 34.05.570(3)(d)-(e), (i).

This appeals court reviews the GMHB's legal conclusions de novo, giving

substantial weight to its interpretation of the statute it administers where the agency has

specialized expertise in dealing with such issues. *City of Redmond v. Cent. Puget Sound

Growth Mgmt. Hearings Bd.*, 136 Wn.2d 38, 46, 959 P.2d 1091 (1998); *City of Burien v.

Cent. Puget Sound Growth Mgmt. Hearings Bd.*, 113 Wn. App. 375, 382, 53 P.3d 1028

(2002). This court reviews the GMHB's factual determinations for substantial evidence.

*Swinomish Indian Tribal Cmty.*, 161 Wn.2d at 424. Substantial evidence exists where there exists a sufficient quantity of evidence to persuade a fair-minded person of the truth or correctness of the order. *Spokane County v. E. Wash. Growth Mgmt. Hearings Bd.*, 176 Wn. App. 555, 564-65, 309 P.3d 673 (2013), *review denied*, 179 Wn.2d 1015 (2014). Finally, courts review challenges that a GMHB order is arbitrary and capricious under RCW 34.05.570(3)(i) by determining whether the order represents "'willful and unreasoning action, taken without regard to or consideration of the facts and circumstances surrounding the action.'" *Kittitas County*, 172 Wn.2d at 154; *City of Redmond*, 136 Wn.2d at 46-47 (citation omitted).

Habitat and Species of Local Importance

We now begin to answer the questions raised by Ferry County's four assignments of error. The GMHB faulted Ferry County for failing to designate any habitat or species of local importance. Ferry County argues it has no obligation to designate any habitat or species of local importance. Futurewise argues that Ferry County must designate species and habitats of local importance. We do not defer to the GMHB on this issue, since the obligations of counties planning under the GMA is a question of law this court reviews de novo. *Kittitas County*, 172 Wn.2d at 154.

We find this dispute unimportant. Assuming Ferry County did not have to donate any species, it passed a critical area ordinance. That ordinance must comply with the GMA, which requires it to include BAS when it decides whether to designate species and

habitats of local importance. *Honesty in Envtl. Analysis and Legislation (HEAL) v. Central Puget Sound Growth Mgmt. Hearings Bd.*, 96 Wn. App. 522, 527, 979 P.2d 864 (1999). "RCW 36.70A.172(1) provides that counties and cities 'shall include' best available science in developing both policies and regulations regarding critical areas. Inclusion of BAS in the development of critical areas policies and regulations is therefore a mandate of the GMA." *HEAL*, 96 Wn. App. at 528.

The GMHB did not require the county to designate any species or habitat of local importance. The GMHB found the county enacted a critical area ordinance. Therefore, the GMHB initially ruled that Ferry County must include BAS in the adoption of that regulation. In the alternative, the county must provide a reasoned justification for departing from BAS.

## Burden of Proof

Ferry County argues the GMHB improperly shifted the burden of proof. Under the GMA, the county's ordinances are presumptively valid upon adoption. RCW 36.70A.320(1). The burden is on the petitioner before the GMHB to demonstrate that any action taken by the county is not in compliance with the GMA. RCW 36.70A.320(2).

In its compliance order, the GMHB recited these presumptions, requiring Futurewise "establish that the new adoption is clearly erroneous in view of the entire record before the Board and in light of the goals and requirements of the chapter." CP at

43

14. Afterward, the GMHB found the county out of compliance with the GMA because "no substantial evidence in the record . . . support[ed] a County finding that BAS was included in designating Ferry County's Fish and Wildlife Habitat Conservation Areas." CP at 28.

While the GMHB correctly recited the presumption, its finding evidences a shift in the burden of production. The GMA requires a county include BAS in its designation of critical areas, but the burden of showing a county failed to comply with this direction falls to petitioners like Futurewise. RCW 36.70A.320. For Futurewise to prevail, the GMHB should have found substantial evidence that BAS was not included in the record. Instead the GMHB found "no substantial evidence" that BAS was included. CP at 28. This improperly shifted the burden to Ferry County.

Had the GMHB correctly placed the burden on Futurewise, the county argues, Futurewise would have had to provide substantial evidence that the county excluded BAS from its designation of critical areas. The standard for including BAS and whether substantial evidence supports the GMHB's finding is the subject of the next section.

The harmless error doctrine applies to misstating the burden of proof if the facts the GMHB found were otherwise sufficient to conclude the county failed to include BAS. *City of Vancouver v. State Pub. Emp't Relations Com'n*, 180 Wn. App. 333, 354-57, 325 P.3d 213 (2014). This is because, under the APA, judicial relief is appropriate only if the "'person seeking judicial relief has been substantially prejudiced by the action

44

complained of.'" RCW 34.05.570(1)(d); *City of Vancouver*, 180 Wn. App. at 357. In its second finding, the GMHB found "Ferry County failed to include the Best Available Science in designating . . . Habitats and Species of Local Importance." CP at 28. This finding does not evidence the same shift in burdens as the first. If substantial evidence supports that finding, the GMHB's error was harmless.

### Best Available Science

The GMHB concluded Ferry County failed to include the BAS in designating habitats and species of local importance. Ferry County challenges this finding. This court reviews the GMHB's factual findings for substantial evidence. Substantial evidence exists where there exists "'a sufficient quantity of evidence to persuade a fair-minded person of the truth or correctness of the order.'" *Spokane County*, 176 Wn. App. at 565 (citation omitted).

In 1995, the state legislature amended the GMA to clarify the standards under which counties are to designate and protect critical areas. The amendment found in RCW 36.70A.172(1) reads:

> (1) In designating and protecting critical areas under this chapter, counties and cities shall include the best available science in developing policies and development regulations to protect the functions and values of critical areas.

The GMA does not define the term "best available science." The Department of Commerce, however, has adopted regulations to assist a county in including BAS in a

critical area ordinance. The regulations recognize the importance of the inclusion of BAS to decisions affecting endangered, threatened, and sensitive species. WAC 365-195-900(3), WAC 365-195-905(2) and WAC 365-195-910 encourage a county to use resources available from state and federal agencies. The responsibility for including best available science lies with the county. WAC 365-195-905(3). A county may consult with qualified scientists, but scientists should follow criteria contained in the regulations. WAC 365-195-905(3).

"Science," for purposes of BAS, is information produced through the scientific process. WAC 365-195-905(5). The information should be peer reviewed. WAC 365-195-905(5)(a)(1). The information should be obtained by methods that can be replicated and that reach logical conclusions. WAC 365-195-905(5)(a)(2)-(3). The scientific information should be the result of appropriate statistical or quantitative methods.

A county need not develop the scientific information through its own means, but it must rely on scientific information. *CFFC*, 155 Wn.2d at 836. By RCW 36.70A.172(1), "the Legislature left the cities and counties with the authority and obligation to take scientific evidence and to balance that evidence among the many goals and factors to fashion locally appropriate regulations based on the evidence not on speculation and surmise." HEAL, 96 Wn. App. at 531. The GMA directs counties to determine what lands are primarily associated with listed protected species, and then to adopt regulations protecting those lands. RCW 36.70A.020(9), .030(5), .060(2), .170(1)(d). "The GMA

requires the county to designate and protect all critical areas within its boundaries."

*Stevens County v. Futurewise*, 146 Wn. App. 493, 511, 192 P.3d 1 (2008). Generally the

DFW's priority habitat maps are the BAS on the county's critical areas for listed species.

*Futurewise*, 146 Wn. App. at 512.

In an earlier generation of this case, Ferry County argued that its citation to

regulations on the subject of critical areas met compliance with the GMA's demand for

BAS. *CFFC*, 155 Wn.2d 824. The high court disagreed because dependence on another

body's rule-making removes the county from the role of considering scientific

information in a reasoned process of analysis. *CFFC*, 155 Wn.2d at 835. Although the

county is not required to use a particular methodology, it must, at a minimum, use some

kind of scientific methodology. *CFFC*, 155 Wn.2d at 836-37. Growth boards require

counties to consider competing scientific information and other factors in a reasoned

process of analysis. *CFFC*, 155 Wn.2d at 835.

One Washington court has emphasized the importance of BAS in the setting of

adopting a critical areas ordinance. The *HEAL* court wrote:

> While the balancing of the many [GMA] factors and goals could
> mean the scientific evidence does not play a major role in the final policy in
> some GMA contexts, it is hard to imagine in the context of critical areas.
> The policies at issue here deal with critical areas, which are deemed
> "critical" because they may be more susceptible to damage from
> development. The nature and extent of this susceptibility is a uniquely
> scientific inquiry. It is one in which the best available science is essential
> to an accurate decision about what policies and regulations are necessary to
> mitigate and will in fact mitigate the environmental effects of new

development.

*HEAL*, 96 Wn. App. at 532-33.

A math teacher requires a student to demonstrate the manner in which she arrived at her result in addition to showing the result. This requirement informs the teacher whether the student thoroughly and correctly performed the calculation. The GMA has a similar demand. The Act affords a county deference when reviewing the scientific evidence, but the BAS must be included in the record and must be considered substantively in the development of critical areas policies and regulations. *HEAL*, 96 Wn. App. at 532. Mere inclusion of scientific sources in a critical area ordinance is not sufficient. *HEAL*, 96 Wn. App. at 531. To demonstrate that BAS has been included, counties and cities should address the BAS on the record. WAC 365-195-915(1). A "'written record'" need not be a discrete document but must provide an actual explanation. *Kittitas County*, 172 Wn.2d at 158. In short, the county should show its work.

Ferry County argues it considered all BAS about habitats and species that might be considered important from a local perspective. It contends it reviewed the DFW's PHS list, DFW Living with Wildlife Series; and a US Department of Fish and Wildlife e-mail of January 26, 2005. The ordinance also lists other guides and letters from Karin Divens that the county reviewed. Based on these sources, the county found no candidate species or species of concern that have been identified as species of local importance.

The county argues the inclusion of these legal and scientific authorities referenced in the record fulfill its obligations under the GMA.

Ferry County inaccurately describes the science upon which it relied, and the county disagreed or ignored DFW's science without developing or obtaining its own valid scientific information. Therefore, we must uphold the GMHB's finding.

The bibliography Ferry County attached to its critical area ordinance separates the sources upon which it relied for each section of the ordinance. Section 9.01-02 designates species and habitats of local importance and the bibliography lists six sources for those sections. The bibliography for designating species and habitats of local importance omits the Natural Resources Conservation Service Field Office Technical Guide, the Soil Conservation Service manual, the National Cooperative Soil Survey, the DFW Classification System for Priority Habitat, updated February 4, 1998, the DFW Priority Habitat and Species Program, initiated 1989, DFW representative Karin Divens's letters, and the transcription of the county's meeting with Karin Divens. Of the six sources the county lists in this section, one is a statute and two are WAC regulations, which are not considered scientific sources.

The only scientific source identified as supporting the critical area ordinance section on habitat or species of local importance is Washington Department of Fish and Wildlife Maps (Fish Planting). This is not a comprehensive source for designating and

protecting wildlife and habitats in Ferry County. Nor did Ferry County explain how it utilized the fish planting maps in creating the ordinance.

We could end our analysis here but we go further and discuss the other science sources that Ferry County cites in support of other portions of the critical area ordinance. Regulations direct a county to consider the Department of Fish and Wildlife's priority habit and species lists, which are peer reviewed by wildlife scientists. WAC 365-190-130(4)(b). The county analyzed only 23 of the 31 species the DFW lists as occurring and being locally important in Ferry County. The county's review did not include the bald eagle, peregrine falcon, flammulated owl, common loon, fisher, gray wolf, grizzly bear, or lynx. Ferry County provided no explanation for omitting a review of the 8 species.

Ferry County refused to list any of the 22 species that it placed on its 2011 review. Most of the reasons the county offered for its refusal are not based in science. Those non-scientific reasons are addressed later. The scientific reasons Ferry County offered are addressed now.

Ferry County refused to list the Columbia spotted frog because chemical runoff from residential and agricultural areas is insignificant, trout have a negative effect on the frog, and there is no winter grazing. No scientific evidence in the record supports these statements.

Ferry County refused to designate the western toad as locally important because "losses occur even in pristine areas due to unknown causes." AR at 1506. Ferry County

provided no scientific support in the record for this assertion.

Ferry County refused to designate the black-backed woodpecker because most private property does not experience large high intensity fires or insect infestations, factors DFW identifies as harmful to the woodpecker. Again, the record lacks scientific support for the county's conclusion.

Ferry County refused to designate Vaux's swift, in part, because insecticide use in Ferry County is limited. The county refused to designate the yellow-billed cuckoo that possibly the bird may be extirpated in Ferry County. The record supports neither of these statements.

Ferry County refused to designate the bull trout because it does not have critical habitat in Ferry County. The county cites a US Fish and Wildlife e-mail dated January 26, 2005, to support this conclusion, but the e-mail is not in the record. The only science source in the bibliography critical area ordinance of locally important species is the "DFW Maps (Fish Planting)." This source does not support a finding of an absence of the bull trout in the county. To the contrary, DFW recommended Ferry County list the bull trout and the department's map for bull trout identifies Ferry County as "a priority area where the species is known to occur." AR at 664.

The county refused to designate Townsend's big-eared bat as a species of local importance, in part, because no private demolition occurs in Ferry County. Again, nothing in the record supports the county's statement.

51

Ferry County refused to designate the Wolverine because of its possible extirpation in the contiguous United States. A 2001 report from the State of Washington on its lynx recovery plan describes the population of wolverines in Washington as "low density." AR at 672. Under a goal of the GMA, low density species should be protected. The DFW's PHS lists wolverines as occurring in Ferry County.

In sum, contrary to DFW's recommendations, Ferry County refused to designate any species or habitats as locally important. In support of its lack of designations, the county uses DFW biologist Karin Divens's letter for support, in which she explains the DFW cannot force the county to designate any species or habitats. Divens is correct that DFW cannot force the county to designate any species or habitats. The county may disagree with or ignore DFW's recommendations. But in choosing this course of action, the county "necessarily ha[s] to unilaterally develop and obtain valid scientific information." *CFFC*, 155 Wn.2d at 836. The county failed to develop or obtain any valid scientific information supporting its refusal to designate any habitats or species as locally important.

Substantial evidence supports the GMHB's finding that the county failed to include BAS in its designation of species and habitats of local importance. The county may depart from BAS, but must do so using a reasoned process. This is the subject of the final section of this opinion.

Reasoned Departure

Ferry County denies it avoided BAS, but argues, assuming it did, its departure resulted from a reasoned justification. The GMHB found Ferry County "failed to provide a reasoned justification for departing from the Best Available Science." CP at 27. This court reviews the GMHB's factual findings for substantial evidence. Substantial evidence exists when there exists "a sufficient quantity of evidence to persuade a fair-minded person of the truth or correctness of the order." *Spokane County*, 176 Wn. App. at 564-65 (citation omitted).

Futurewise argues the county's departure from BAS must be based in science, citing *CFFC*, 155 Wn.2d at 837. We disagree. The *CFFC* court analyzed whether Ferry County departed from BAS using a reasoned process and found the county's process insufficient because the county did not evaluate the science produced by Dr. McKnight or compare his science with any other resources. *CFFC*, 155 Wn.2d at 837. The court analyzed Ferry County's process for departing from BAS in scientific terms because the county departed from BAS for scientific reasons. *CFFC*, 155 Wn.2d at 837. The court subsequently clarified that the GMA does not require the county to follow BAS; rather, it is required to include BAS in its record. Thus, a county may depart from BAS if it provides a reasoned justification for such a departure. *Swinomish Indian Tribal Cmty.*, 161 Wn.2d at 431-32. Our court has declared, however, that departure from BAS in a critical areas ordinance should be rare. *HEAL*, 96 Wn. App. at 532-33.

What constitutes a sufficiently reasoned process for departing from BAS is poorly defined in GMA jurisprudence. But reasoned means rational and supported by evidence. In *Swinomish Tribal Community*, BAS supported riparian buffers to protect fish habitat in agricultural areas, but those areas had been diked and drained as much as 100 years ago. 161 Wn.2d at 431. Skagit County departed from BAS because it would require the county to restore habitats that no longer existed. The court upheld the county's justification for departing from BAS because the GMA does not require counties to enhance critical areas, only to protect them. 161 Wn.2d at 431. The proposed buffers were inconsistent with the goals of the GMA.

This division of the Court of Appeals agreed Stevens County departed from BAS for an insufficiently reasoned process in *Stevens County*, 146 Wn. App. 493. Stevens County tied its classification of critical habitat to lands designated for protection by federal or state rule making. We found Stevens County failed to comply with the GMA because its critical areas ordinance removed the county from the role of considering scientific information in a reasoned process of analysis. 146 Wn. App. at 514-15.

When departing from BAS, a county must again show its work. In *Yakima County v. E. Wash. Growth Mgmt. Hearings Bd.*, 168 Wn. App. 680, 693, 279 P.3d 434 (2012), we affirmed the GMHB because the county failed to provide in the record a justification for rejecting BAS with regard to stream buffers.

Ferry County contends its departure from BAS was reasonable for various reasons. The county argues that 4 of the 31 DFW designated species are not found in Ferry County. The county argues it did not list two species because they are federally listed and seven ETS species because they are being addressed in other revisions to the county's ordinance. The record does not reflect any review or analysis of these species. Like the *Stevens County* and *Yakima County* decisions, we find the county's lack of analysis is not a reasoned justification or process, which could justify departing from BAS. Even if Ferry County had reviewed these species, their status as federally listed or ETS species does not reflect any reason they should not also be designated as species of local importance.

Ferry County next argues it departed from science because wetland and riparian regulations and buffers already protect 11 species on the DFW list. But as Futurewise argues, protection by other regulations is irrelevant. Otherwise the GMA's critical habitat provisions are superfluous since state and federal rules already seek to protect ETS species. More importantly, nothing in the record supports the county's assertion. There is no evidence that the county analyzed regulations and determined existing regulations were sufficient to protect these 11 species.

Ferry County argues it departed from BAS that recommended designating nineteen species because the land they inhabit is under the authority of the federal, tribal, or state government, or the DFW did not list any occurrences of the species in Ferry

55

County. Futurewise argues the county has jurisdiction over developments that are not forested practices on forested private land. The county's jurisdiction is not delineated in the record. Assuming the county's assertion is accurate, the county still fails to offer a reason for departing from BAS.

Karin Divens explained the lack of a reasoned justification behind relying on state and federal protection in her July 2011 letter to the County Commission. AR at 1134. As Divens noted, the jurisdiction of other sovereigns on Ferry County land does not diminish the need for designating the species' habitats as locally important. By relinquishing to other jurisdictions, Ferry County removes itself from the role of considering scientific information in a reasoned process of analysis, which it cannot do.

Ferry County also refused to list some species because DFW's PHS list could not confirm their breeding habitat. This assertion is not a reasoned justification because breeding habitats are not the only habitats needing protection. DFW explained the other reasons for protecting priority habitats in its PHS list:

> *Priority habitats* are habitat types or elements with unique or significant value to a diverse assemblage of species. A *priority habitat* may consist of unique vegetation type (e.g., shrub-steppe) or dominant plant species (e.g., juniper savannah), a described successional stage (e.g., old-growth forest), or a specific habitat feature (e.g., cliffs).

AR at 657 (emphasis in original). The county failed to analyze these other reasons for protecting their habitat. Again, a failure to analyze BAS does not constitute a sufficiently reasoned process for departing from BAS. *Stevens County*, 146 Wn. App. at 514-15;

56

*Yakima County*, 168 Wn. App. at 693. In addition, Ferry County pointed to the lack of information as a reason for not designating these species and their habitats. In the absence of scientific evidence, a county should adopt a precautionary or no risk approach. WAC 365-195-920. But even if the lack of science were a valid reason to not designate a species, Ferry County provided no explanation for why, in particular, the breeding locations of a species must be known in order to designate them as locally important.

Finally, Ferry County justifies its refusal to list some species because protection of the species will negatively impact the entire economy of Ferry County. For support of this contention, Ferry County emphasizes that only 18 percent of land within Ferry County is privately owned. But nothing in the record analyzes how designating the species could harm private ownership or the economy of Ferry County. The record does not show that protecting any species will thwart any planned development. The record does not show that protected habitats will interfere with the county's mining, logging or other industries.

We want Ferry County to economically succeed but reject the implication that protecting endangered wildlife and habitat is necessarily bad for the economy. The GMA does not seek to preclude all development, but to manage development. Homes and other structures may be built in a place and manner to protect wildlife. Mining and logging can be performed with preservation of habitat in mind. For all we know, Ferry County could promote its emerging tourism industry by conserving its wildlife.

57

No. 31331-0-III
*Ferry County v. Growth Mgmt. Hearings*

Substantial evidence supports the GMHB's finding that the county failed to provide a reasoned justification for departing from the BAS.

CONCLUSION

We uphold the GMHB's December 2011 noncompliance order and reverse the trial court's partial summary judgment order.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

Fearing, J.

WE CONCUR:

Siddoway, C.J.

Korsmo, J.